681 So.2d 826 (1996)
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., Appellant,
v.
TALLAHASSEE MEDICAL CENTER, INC., d/b/a Tallahassee Community Hospital, Appellee.
No. 95-1400.
District Court of Appeal of Florida, First District.
October 11, 1996.
*828 Robert P. Smith of Hopping, Green, Sams & Smith, P.A., John D. Buchanan of Henry, Buchanan, Mick, Hudson & Suber, P.A., Tallahassee, for appellant.
Robert L. Hinkle and Elizabeth McArthur of Radey, Hinkle, Thomas & McArthur, Tallahassee, for appellee.

OPINION ON MOTION FOR REHEARING
WOLF, Judge.
We grant appellant's motion for rehearing and substitute the following opinion for the original.
Tallahassee Memorial Regional Medical Center, Inc. (TMRMC), formerly Tallahassee Memorial Hospital (TMH), challenges a final summary judgment determining that section 18 of Leon County ordinance 90-22 (section 18) does not impose a duty upon appellee, Tallahassee Community Hospital (TCH), which is enforceable by way of a private tort action. TMRMC also challenges the determination in the final summary judgment that the ordinance does not create a private cause of action because such an interpretation would 1) be preempted by state statute, and 2) would result in the ordinance being unconstitutional as it would not relate to a legitimate public purpose.[1] We determine that the ordinance on its face creates a private cause of action and that state statutes do not preempt a county ordinance from determining how to subsidize emergency ambulance services. We also find, however, that the portion of the ordinance which makes a receiving hospital primarily responsible for payment for ambulance services expressly conflicts with section 395.1041(3)(k)(1), Florida Statutes. We, therefore, affirm the ultimate decision of the trial court, denying TMRMC's request to enforce section 18, but reverse and remand those portions of the final judgment which determine that no private cause of action was created, and that the Legislature had preempted the entire field of financing local ambulance service. It is, therefore, unnecessary to address the constitutional due process issue. TMRMC also asserts that the portion of the summary judgment striking counts II-IV of their complaint was in error. We find no error, and affirm as to that portion of the summary judgment without further discussion.
TMH was Tallahassee's first acute-care hospital, owned and operated by the city of Tallahassee. In 1972, the city, through TMH, began operating the local ambulance service; therefore, the ambulance service was part of the city government. In 1979, when Tallahassee Community Hospital (TCH) opened as Tallahassee's second acute-care hospital, TMH reorganized as a private not-for-profit corporation and was renamed Tallahassee Memorial Regional Medical Center (TMRMC). The city of Tallahassee leased all the hospital property, including land, buildings, and equipment to TMRMC. TMRMC continued to provide all the services previously provided by TMH. Those services included the ambulance service.
After TCH began emergency room services, the Florida Attorney General's office investigated complaints that TMRMC's ambulance service was violating the antitrust laws by discriminating in favor of TMRMC's hospital. In order to settle antitrust charges, TMRMC entered an agreement under which its ambulance service was to deliver patients to TCH and TMRMC without discrimination. The agreement afforded TCH various means of attempting to assure *829 compliance, including the right to audit TMRMC's records, the right to monitor certain TMRMC ambulance staff meetings, and the right to bring concerns to an independent nongovernmental ombudsman. In exchange, TCH agreed to pay TMRMC its charges, less an agreed discount, for each patient delivered to TCH. The agreement could be cancelled by the attorney general with or without cause.
The attorney general eventually cancelled the agreement at the request of TCH. The attorney general noted that it was possible for competition in the ambulance business to take place in Tallahassee, and that no agreement of the type originally entered was needed; therefore, the attorney general recommended adoption of a county ordinance under which such competition could take place. TMRMC challenged the cancellation of the agreement and was unsuccessful. Tallahassee Memorial Regional Medical Center, Inc. v. Butterworth, 557 So.2d 38 (Fla. 1st DCA 1989) (per curiam affirmance).
At the suggestion of the attorney general, TCH proposed that Leon County adopt an ordinance setting forth standards for certificates of public convenience and necessity to regulate the provision of ambulance service, as authorized by state law governing ambulance providers. The Leon County Commission appointed a committee and developed a draft ordinance that did not include any provision for payment by TCH for ambulance service.
TMRMC prepared a provision for insertion in the ordinance (section 18) requiring each hospital to pay the ambulance service for services rendered to patients delivered to or picked up from that hospital. TCH objected to the payment provision of the proposed ordinance, asserting that it would be invalid; however, the commission adopted the proposed ordinance as amended, Leon County Ordinance 90-22.
Section 18 of the Leon County ordinance states in pertinent part as follows:
Section 18. Financial responsibility of hospitals. As long as the County's Advanced Life Support Certificate Holder is a private not-for-profit corporation and as long as its Ambulance Service is operated at a loss on an annual basis, then each hospital in the County will assist in maintaining the financial integrity of the Ambulance Service by ensuring payment for services rendered to patients brought to each respective hospital. By accepting the services provided by the Ambulance Service, each hospital agrees to pay the Ambulance Service for patients brought to it. Each hospital will also pay the Ambulance Service for services rendered in taking patients to and from its facility to receive special service elsewhere or to be transferred to another facility or location. As long as the Ambulance Service operates at an annual loss, each hospital will pay the Ambulance Service its designated rates. Each hospital is expected to seek reimbursement from the patients brought to it. Payments made by hospitals to the ambulance service will be due within (30) days of billing by the ambulance service.
Section 13 of Leon County Ordinance No. 90-22 provides in pertinent part as follows:
Section 13. Civil remedies.

The board or an aggrieved person may have recourse to such remedies in law and in equity as may be necessary to ensure compliance with the provisions of this ordinance, including injunctive relief to enjoin and restrain any person from violating its provisions.
In a four-count complaint, TMRMC complained that TCH had been billed in excess of $400,000 pursuant to the terms of the ordinance and that no payments whatsoever had been made. TMRMC's complaint sought recovery from TCH in four counts: Count I sought recovery under section 18 of the ambulance ordinance; count II sought recovery under an alleged implied contract between TMRMC and TCH (TMRMC asserted that the triage agreement addressing which patients should be delivered to which hospital was impliedly an agreement for payment); count III sought recovery in quantum meruit; count IV sought recovery under the theory of unjust enrichment.
TCH answered the complaint, denying many of TMRMC's substantive allegations and setting forth affirmative defenses, including *830 that section 18 was unconstitutional, inconsistent with federal and state law, and beyond the authority of the Leon County Commission; that TMRMC had repeatedly violated the ordinance; and that in any event, the conditions precedent to payment under section 18 did not exist. TCH also counterclaimed, seeking a declaration that section 18 is invalid and setting forth claims for damages for, among other things, TMRMC's delivery of paying patients to TMRMC who properly should have been delivered to TCH, and dumping of nonpaying patients at TCH who should have been delivered to TMRMC.
After discovery, TCH moved for partial summary judgment, arguing the invalidity of section 18. TCH, in support of its motion, filed the various affidavits and depositions. TMRMC filed an affidavit in opposition to the motion. The hearing was held on September 27, 1993, at which the court took TCH's summary judgment motion under advisement. TMRMC conducted additional depositions which were filed on November 9, 1993, and became part of the record.
The court granted TCH's partial summary judgment on June 8, 1994, holding section 18 invalid and unconstitutional as a violation of the takings clause, due process, and equal protection. The partial summary judgment was vacated as to count I in the final judgment being appealed.[2]
In the final judgment which is presently on appeal, the trial court did not specifically rule on the due process claim, but stated,
If section 18 of the ordinance was not designed solely for the purpose of protecting individuals in need of emergency medical transport, but instead to protect the financial viability of TMRMC's ambulance service, TMRMC would be the only member of the protected class. The financial protection of a particular business is not a valid government purpose. If section 18 does not reasonably relate to a legitimate public purpose, it is invalid and unenforceable pursuant to the Due Process Clauses of the Florida and United States Constitutions. U.S. constitutional amendments V & XIV; article I, section 8, Florida Constitution; Department of Ins. v. Dade County Consumer Advocate's Office, 492 So.2d 1032 (Fla.1986); Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). Accordingly, even if section 18 of the ordinance is a valid exercise of the county's police power, it does not constitute a valid basis for recovery in tort by the plaintiff.
TMRMC appeals from the trial court's determination.[3]
We first must determine whether the explicit language of section 18 and section 13 of the Leon County ordinance demonstrates an intent to create a private cause of action to enforce the ordinance. The plain meaning of statutory language is the first consideration of statutory construction. Acosta v. Richter, 671 So.2d 149, 153 (Fla. 1996). "When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute itself must be given its plain and obvious meaning." C.S. and J.S. v. S.H and K.H., 671 So.2d 260, 268 (Fla. 4th DCA 1996). It is, therefore, error for a trial court to rely on extrinsic aids to statutory construction when the language of a statute or ordinance is plain and unambiguous. Smith v. Crawford, 645 So.2d 513 (Fla. 1st DCA 1994). The plain and unambiguous terms of section 13 of the ordinance is to create a civil cause of action for aggrieved parties. Section 18 was clearly intended *831 to provide relief for the ambulance service provider if it was operating at a loss. The trial court, however, relied on tools of statutory construction to ignore the plain meaning of the language within the ordinance. Therefore, the trial court's ruling that the ordinance failed to create a cause of action on behalf of TMRMC constituted error. Smith v. Crawford, supra.
We are next faced with the trial court's determination that "[t]o the extent that section 13 purports to do so [create a cause of action], it is preempted by statutes covering the same subject matters." Noncharter counties have broad authority to enact "county ordinances not inconsistent with general or special law." Art. VII, § 1(f), Fla. Const.; St. Johns County v. Northeast Florida Builders Ass'n, 583 So.2d 635 (Fla.1991). In Santa Rosa County v. Gulf Power Co., 635 So.2d 96 (Fla. 1st DCA 1994), we determined that section 125.01(1), Florida Statutes, gives counties broad power to govern "to the extent not inconsistent with general or special law." There are, however, two separate and distinct ways that a local government ordinance may be found to be inconsistent with state law: First, if the Legislature has preempted a particular subject area, Speer v. Olson, 367 So.2d 207 (Fla.1978); and second, in those cases where both a local government and the state have authority to legislate in a particular area, the local government ordinance must not specifically conflict with state statute. Thomas v. State, 614 So.2d 468 (Fla.1993); City of Casselberry v. Orange County Police Benevolent Ass'n, 482 So.2d 336 (Fla.1986).
In Santa Rosa County, supra, we recognized that there were two types of preemption: expressed or implied. Id. at 101. In cases where the Legislature expressly or specifically preempts an area, there is no problem with ascertaining what the Legislature intended. Implied preemption, however, is a more difficult concept. The courts should be careful in imputing an intent on behalf of the Legislature to preclude a local elected governing body from exercising its home rule powers. St. Johns County, supra; Santa Rosa County, supra. Implied preemption should be found to exist only in cases where the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature. Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984), rev. dismissed, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985); Hillsborough County v. Florida Restaurant Ass'n, Inc., 603 So.2d 587 (Fla. 2d DCA 1992). The scope of the preemption should also be limited to the specific area where the Legislature has expressed their will to be the sole regulator. St. Johns County v. Northeast Builders Ass'n, supra (the existence of one funding mechanism by the Legislature does not preclude the county from adopting additional funding mechanisms); Santa Rosa County v. Gulf Power Co., supra (the existence of a pervasive scheme of regulation by the Legislature over an electric utility does not preclude the county from adopting a franchise fee for the use of county right-of-way).
In the instant case, appellee argues that the extensive regulatory and licensing procedures established in chapter 401, part III, and chapter 395, Florida Statutes, precludes the county from adopting section 18 of the ordinance. In part, appellee relies on County of Volusia v. City of Daytona Beach, 420 So.2d 606 (Fla. 5th DCA 1982).
In County of Volusia, the court relied on an expressed statutory preemption contained in section 401.25(8), Florida Statutes, concerning regulation of medical transportation services in order to uphold Volusia County's denial of the city of Daytona Beach's request to provide medical transportation services. The court held that the licensing authority was expressly preempted to the county. In the instant case, the dispute concerns the authority of the county to provide for alternative funding mechanisms to subsidize emergency medical transportation services. The issue does not involve the regulation or licensing of services. In addition, unlike Volusia County, supra, the instant case questions whether the state has preempted the county's powers, not whether the state intended to provide sole power to the county. The Volusia County case is, thus, inapplicable.
In addition, neither the constitution nor the statutes contain a specific preemption of *832 the county's authority to subsidize the emergency medical services. In Harris v. Wilson, 656 So.2d 512 (Fla. 1st DCA 1995), we recognized that while the area of taxation is expressly preempted to the state by article VII, section 1 of the Florida Constitution, other forms of financing are not. See also City of Boca Raton v. State, 595 So.2d 25, 29 (Fla.1992).[4]
The statutory sections contained in chapters 395 and 401 related to funding also do not expressly constitute a preemption of the county's authority to subsidize emergency medical services. While section 395.1041(3)(k), Florida Statutes (1993), deals with a mechanism of funding emergency medical services, there is nothing in the statute which would indicate a desire to preempt the county's authority to subsidize this funding through its home rule power. See St. Johns County, supra. In addition, there is no public policy reason for precluding the county from subsidizing this service through an equitable fee; to the contrary, the subsidization of this required service would appear to be a public necessity. We, therefore, find that no preemption of the subject area existed.
We next address the final issue: If the county had the power to adopt ordinances to subsidize the emergency medical transportation provider, did the method they chose expressly conflict with state statute. Section 395.1041(3)(k)1, Fla. Stat., specifically governs who pays for ambulance services and when a payment agreement can be required:
Emergency medical services providers may not condition the prehospital transport of any person in need of emergency services and care on the person's ability to pay.... However, the patient or the patient's legally responsible relative or guardian shall execute an agreement to pay for the transport or otherwise supply insurance or credit information promptly after the transport is rendered.
(Emphasis added). Thus, state law requires the ambulance provider to first look to the patient, not the receiving hospital for payment. It also contemplates that the service provider will be the party who attempts to collect from the party receiving services prior to seeking supplemental funding. Section 18 makes the receiving hospital primarily responsible for paying for the ambulance service. The ordinance then requires the receiving hospital to seek reimbursement from the patients brought to it. This method of collection contained in section 18 is in conflict with state law and must fail. See Thomas v. State, 614 So.2d 468 (Fla.1993). We are unable to sever the collection method contained in section 18 from the rest of the section as written; therefore, we must invalidate the entire section.[5] We remand the case to the trial court for entry of a final summary judgment consistent with this opinion.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] Both of the parties raise other constitutional arguments as well as federal preemption arguments which were not addressed by the trial court, and which we decline to address for the first time on appeal.
[2] In granting TCH's motion for partial summary judgment, the court dismissed with prejudice count I of TMRMC's complaint, and entered a declaratory judgment for TCH on count I of the counterclaim. An appeal was filed from that order, which was dismissed by this court because there was no appealable order, based on the continued pendency of counts II through IV of TMRMC's complaint, and counts II through VII of TCH's counterclaim.
[3] As previously stated, we specifically decline to rule on appellant's due process claim, but would note that questions of fact may still remain in determining the necessity for subsidizing ambulance services and whether TCH receives any benefits from the service.
[4] In its brief, appellee argues that the financing mechanism contained within section 18 of the ordinance constituted an illegal tax. See State v. City of Port Orange, 650 So.2d 1 (Fla.1994), this argument was neither ruled on by the trial court nor fully developed. We, therefore, decline to address it.
[5] We specifically note that this holding does not preclude the county from providing a method of subsidizing emergency medical transportation services which would be consistent with state law.