990 So.2d 614 (2008)
City of Miami Police Chief John F. TIMONEY, Appellant,
v.
CITY OF MIAMI CIVILIAN INVESTIGATIVE PANEL, Appellee.
No. 3D08-677.
District Court of Appeal of Florida, Third District.
September 3, 2008.
*615 Greenberg Traurig, Alan T. Dimond, Elliot H. Scherker and Elliot B. Kula, Miami, for appellant.
Charles C. Mays, Miami, for appellee.
Cohen & Rind and Ronald J. Cohen, Miami Lakes, for Armando Aguilar as amicus curiae.
Before RAMIREZ, SUAREZ, and CORTIÑAS, JJ.
SUAREZ, J.
City of Miami Police Chief John Timoney appeals from an order denying his motion to dismiss the City of Miami Civilian Investigative Panel's ("CIP") investigation for lack of jurisdiction, and granting the CIP's petition to enforce a subpoena requiring him to testify before the panel and provide documents. We affirm.

*616 I. Facts and Procedural History
The CIP[1] received a written complaint on September 14, 2007, alleging that Chief Timoney accepted a free Lexus SUV from Lexus of Kendall and drove the car for approximately fifteen months in violation of local police regulations and state laws. The CIP initiated an investigation into the complaint on October 19, 2007, and served a subpoena on Chief Timoney on November 30, 2007. The subpoena required Chief Timoney to testify before the CIP on December 7, 2007. The day before he was required to appear, CIP's independent counsel received a request from Chief Timoney's assistant to reschedule the CIP hearing because of a conflict in the Chief's schedule. The CIP agreed to reschedule and served Chief Timoney with a second subpoena on December 10, 2007, requiring him to appear on December 17, 2007. Upon receiving his second subpoena, Chief Timoney sent a letter to the CIP independent counsel requesting clarification of the second subpoena. The CIP independent counsel immediately responded, and the CIP again rescheduled his date of appearance to December 21, 2007. Chief Timoney appeared on December 21, but refused to testify or produce any documents.
In accordance with its Enabling Ordinance, the CIP filed a Petition to Enforce Subpoenas in the Circuit Court of Miami-Dade County. The circuit court granted the CIP's petition on January 4, 2008, and directed Chief Timoney to comply with the CIP's two prior subpoenas. Chief Timoney was served with the court's order that day. The CIP then notified Chief Timoney that he was required to appear on January 11, 2008.
Chief Timoney did not appear on that date, but instead filed a Motion to Quash Subpoena Duces Tecum on January 11, 2008. In his motion, Chief Timoney alleged that, as the Chief of Police, he was not subject to the CIP's jurisdiction and that the documents the CIP requested were not public records and therefore not subject to a subpoena. On February 19, 2008, Chief Timoney filed a Motion to Dismiss the Petition for Lack of Jurisdiction, claiming that the CIP no longer had jurisdiction to investigate his alleged misconduct because the CIP's statutorily prescribed deadline of 120 days for completing an investigation had passed four days earlier.
Chief Timoney's motions were argued on March 6, 2006. The trial court denied Chief Timoney's Motion to Dismiss, granted his Motion to Set Aside the Order Granting Petition to Enforce Subpoenas, and again ordered him to comply with the subpoenas immediately. Chief Timoney appealed the trial court's orders, again claiming that he was not subject to the CIP's authority and that the statutorily prescribed time for conclusion of the CIP investigation had ended.

*617 II. Governing Law
The CIP was created to "act as independent civilian oversight of the sworn police department." City of Miami Code, Art. II, § 11.5-27(1) (2002) (emphasis added).[2] The Enabling Ordinance permits the CIP to "conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department." City of Miami Code, art. II, § 11.5-27(5) (2002) (emphasis added). The ordinance empowers the CIP to accomplish this purpose through different procedures, including initiating and conducting its own investigation or subsequent to a police department internal affairs investigation.[3] The CIP also *618 has the authority to issue subpoenas, after consultation with the State Attorney of the Eleventh Judicial Circuit, (Miami-Dade County) and after approval of the CIP independent counsel, for the purpose of obtaining evidence from witnesses and "production of books, papers, and other evidence, which subpoenas shall be signed, served and enforced pursuant to applicable law ..." City of Miami Code, art. II § 11.5-27(6) (2002).
The Enabling Ordinance also specifically requires that "policies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes." City of Miami Code, art. II, § 11.5-33(e) (2002). Chapter 112 concerns internal investigations conducted by a police department of its own officers. The pertinent portions of Chapter 112 are sections 112.531 and 112.532, Florida Statutes (2007). Section 112.532, known as the "Police Officers' Bill of Rights," describes the rights and privileges of all law enforcement officers and correctional officers, and imposes conditions for investigation, "whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion or dismissal ..." (emphasis added). That section sets forth the procedures to be followed by the police department for interrogation of a law enforcement officer under investigation by the police department. See § 112.532(1)-(6), Fla. Stat. (2007). Section 112.531(1) defines "law enforcement officers" for the purposes of Chapter 112 internal investigations to include any person, other than the chief of police, who is employed full time by any municipality and whose primary responsibility is the prevention of crime.[4] The *619 chief of police is, therefore, exempt from an internal police department investigation. The CIP's authority, however, extends to independent, external investigations, from which the chief of police is not exempt.

III. Analysis
The CIP has independent investigative authority over the City of Miami's police chief. The plain language of the Enabling Ordinance gives CIP independent civilian oversight of the sworn police department, and that includes the chief of police. See City of Miami Codes, § 11.5-27(1)-(11) (2002). Chief Timoney argues that, as the CIP must comply with the provisions of Chapter 112, Florida Statutes (2007), he is therefore exempt from investigation by the CIP. See City of Miami Code, § 11.5-33(e) (2002). Chapter 112 governs the rights of law enforcement officers while under investigation, and it specifically exempts the police chief from internal agency investigation. §§ 112.531-112.532, Fla. Stat. (2007). We agree with Chief Timoney that the procedures for internal police investigations established by Chapter 112 do not apply to chiefs of police. The CIP, however, is only restricted by Chapter 112's definition of "law enforcement officer" when the investigation is internal, that is, by "members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal...." Ch. 112.531(1), Fla. Stat. (2007). Chapter 112 does not apply, as in this case, to an independent, external investigation, where the CIP's Enabling Ordinance provides that any sworn police officer is subject to an independent investigation by the CIP. City of Miami Code, art. II, § 11.5-27(1) (2002). Accordingly, Chief Timoney is not exempt from the CIP's authority because the CIP is not following up on an internal affairs investigation pursuant to Chapter 112, from which Timoney is exempt; rather, the CIP is conducting its own, independent external investigation, and Chief Timoney is not exempt. See City of Miami Code, Art. II, Sec. 11.5-26 (2002).
Chief Timoney further argues that the CIP ordinance evidences intent to exclude the chief of police from its authority because the ordinance requires the CIP to give the chief of police a written report of its findings, to which the police chief is required to respond. This is an absurd result, Chief Timoney argues, if the police chief's conduct itself is the subject of the investigation and report. We do not agree. The City of Miami Chief of Police is not exclusively responsible for acting on the CIP's recommendations. The CIP also reports information and evidence to the mayor, city commission, city attorney and city manager, as well as to the public. City of Miami Code Art. II, §§ 11.5-27(5), (8), (9); 11.5-31(5) (2002). Timoney, as chief of police, is subordinate to other city executives to whom the CIP reports, and he is subject to the discipline of his superiors should the CIP's investigation implicate him.
We also agree with the trial court that Chief Timoney must comply with the subpoenas issued by the CIP. Pursuant to the Enabling Ordinance, the CIP has the power to execute its investigations by requesting "issuance of subpoenas, after consultation with the State Attorney of the Eleventh Judicial Circuit, (Miami-Dade County) and approval of CIP independent counsel, for the purpose of obtaining evidence from witnesses and productions of books, papers, *620 and other evidence, which subpoenas shall be signed, served and enforced pursuant to applicable law ..." City of Miami Code, Art. II § 11.5-27(6) (2002). The Enabling Ordinance does not restrict the CIP's authority to subpoena only public records, contrary to Chief Timoney's assertion. Further, the ordinance's requirement of compliance with Chapter 119, Florida Statutes, governing public records, does not restrict the CIP's access solely to public records. The CIP has the authority to subpoena documents that are not public records and Chief Timoney is obligated by law to comply.
Finally, the CIP did not lose jurisdiction over the matter upon expiration of the 120-day limitations period provided by section 11.5-31 of the CIP's enabling statute. City of Miami Code, Art. II, § 11.5-31 (2002). Applicable law does not permit Chief Timoney to purposefully delay proceedings until the statute of limitations has run, and then claim that the CIP no longer has jurisdiction over him. The CIP began its investigation of Chief Timoney on October 19, 2007, and lawfully served Chief Timoney with its first subpoena on November 30, 2007. Chief Timoney rescheduled his appearance. On December 10, 2007, the CIP served Chief Timoney with a second subpoena, commanding him to appear on December 17th. Again, Chief Timoney delayed, asking for clarification. Chief Timoney finally appeared on December 21, 2007, but failed to produce the subpoenaed documents and refused to testify.
The doctrine of equitable estoppel prevents Chief Timoney from profiting by his own purposeful delay or misconduct. See Major League Baseball v. Morsani, 790 So.2d 1071, 1077 (Fla.2001);[5]State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla. 1950); see also Fla. Dep't of Health & Rehabilitative Servs. v. S.A.P, 835 So.2d 1091, 1097 n. 11 (Fla.2002). Because Chief Timoney chose to rebuff or postpone the CIP's legal inquiries and directly caused the delay of the CIP's investigation, he is barred from asserting expiration of the 120-day limitations period.
We hold that where it initiates and conducts an independent, external investigation pursuant to its Enabling Ordinance, the CIP has jurisdiction over the City of Miami Chief of Police as a sworn officer of the city police department, and the Chief of Police must, accordingly, comply with the CIP's independent investigative authority.
The orders below are affirmed.[6]
NOTES
[1] On August 9, 2001, the City of Miami Commission passed Resolution Number 01-844, § 2. The resolution added to the City of Miami Charter Section 51, providing that the City Commission "shall, by ordinance, create and establish a civilian investigative panel to act as independent citizens' oversight of the sworn police department." The resolution instructed the City Commission to authorize the CIP to "conduct independent investigations of police misconduct, review policies of the police department, and make recommendations to the city manager and/or directly to the police chief...." The City Commission responded by passing Miami Ordinance No. 12188, § 1, on February 14, 2002, adding Chapter 11.5 to the City of Miami Code of Ordinances. Chapter 11.5 ("Enabling Ordinance") creates the CIP, describes its purposes, powers and duties, explains its procedures and grants the CIP subpoena power so that it can conduct its activities "consistent with applicable law."
[2] Sec. 11.5-27. Purposes, powers and duties.

The purpose, powers and duties of the CIP are to:
(1) Act as independent civilian oversight of the sworn police department;
(2) Exercise its powers so as to not interfere with any ongoing investigations and conduct its activities consistent with applicable law, including the Florida Government in the Sunshine Law and with applicable law and labor contracts; ...
...
(5) Conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department;
(6) Request issuance of subpoenas, after consultation with the state attorney of the Eleventh Judicial Circuit, (Miami-Dade County) and approval of CIP independent counsel, for the purpose of obtaining evidence from witnesses and production of books, papers, and other evidence, which subpoenas shall be signed, served and enforced pursuant to applicable law, provided that no immunity be conferred by the CIP;
(7) Enhance understanding of the process of submitting, processing and responding to citizen complaints regarding misconduct by police officers;
(8) Issue reports to the mayor, city commission, city attorney, city manager, chief of police and the public; ... (Ord. No. 12188, § 1, 2-14-02) [emphasis added].
[3] Sec. 11.5-31. Procedures.

The following procedures shall be followed: ...
...
(2) The review or investigation of complaints shall proceed as set forth herein.
a. Investigation of complaints related to police misconduct received by the CIP. The CIP may proceed with an investigation after determination by its independent counsel, who shall be required to consult with the appropriate prosecutorial agencies, that an investigation will not interfere with any pending criminal investigation. A decision of the CIP to proceed with an investigation may be challenged by any agency engaged in such investigation or prosecution by seeking judicial order in law or equity in a court of competent jurisdiction in accordance with general law. Written notification of such challenge to the CIP shall stay the investigation for 48 hours permitting the agency to obtain such judicial order;
(b) Internal affairs reports. At the conclusion of the internal affairs investigation, the internal affairs report prepared for the Chief of Police shall be transmitted to the CIP within three working days;
(c) Upon written determination by its independent counsel that an investigation of allegations of police misconduct may commence or after review of the internal affairs report, the CIP may:
1. Request that the chief of police conduct further investigation, or
(ii) Obtain further case-specific information from the chief of police, including written materials, audio or video tapes, and related documents, or
(iii) Conduct an independent investigation, such investigation to be concluded within 120 days, or
(iv) Notice and hold a hearing to gather evidence, or
(v) Report its written findings and conclusions to the city manager and/or the chief of police;
d. If the CIP fails to act within the time periods specified in subsection (3) herein below, the complaint file shall be closed without a finding;
e. The CIP chairperson may assign a member or committee to review Internal Affairs reports and make a recommendation that the CIP take one of the actions enumerated in subsection c. above;
f. Affected officers, and complainants, to the extent permitted by law, shall receive copies of CIP reports to the police department, and of the CIP's requests for information.
(3) The review or investigation process shall be concluded:
a. Within 30 days of receiving the internal affairs report;
b. Within 120 days of receiving the determination that an independent investigation may commence;
(4) At the conclusion of each review or investigation, the CIP shall render one of the following findings based on the preponderance of the evidence:
a. Unfounded where the review or investigation shows that the act or acts complained of did not occur or were misconstrued;
b. Exonerated where the acts that provide the basis for the complaint occurred, but the review or investigation shows such acts were proper;
c. Not sustained where, for example, the review or investigation fails to disclose sufficient facts to prove or disprove the allegation made in the complaint;
d. Sustained where, for example, the review or investigation discloses sufficient facts to prove the allegations made in the complaint;
e. No finding where, for example, the complainant failed to produce information to further the investigation, the review or investigation revealed that another agency was responsible, and the complaint has been referred to that agency, the complaint withdrew the complaint, the complainant is unavailable to clarify the complaint, or the officer is no longer employed by the city, or the CIP did not reach a conclusion.
(5) At the conclusion of its review or investigation the CIP shall forward its written findings and conclusions to the chief of police and to affected officers and, to the extent permitted by law, to the complainants to which a timely written response shall be received from the chief of police within 30 days. (Ord. No. 12188, § 1, 2-14-02)
[4] 112.531. Definitions.

As used in this part:
(1) "Law enforcement officer" means any person, other than a chief of police, who is employed full time by any municipality or the state or any political subdivision thereof and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state; and includes any person who is appointed by the sheriff as a deputy sheriff pursuant to s. 30.07.
[5] Equitable estoppel ... is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed.

Morsani, 790 So.2d at 1079.
[6] Although we disagree with portions of the trial court's reasoning, we nevertheless affirm based on the foregoing opinion.