SALTER, J.
The City of Miami appeals a final judgment and summary judgment in favor of Jorge Martinez-Esteve regarding his employment classification and layoff in October 2009. We affirm.
Martinez-Esteve was initially hired by the City in 2002 as a project representative in the Department of Economic Development. He had an undergraduate and graduate degree in economics from the University of Miami, and he had worked for over thirty years in the areas of economic development and financial analysis. In November 2003, he became a permanent civil service employee. In December 2004, he was promoted by the City to the position of business development coordinator.
In December 2006, the City advised Martinez-Esteve (in a memo entitled “Return to Former Classification”) that, “in accordance with Civil Service Rules and Regulations, you are being rolled back to Project Representative.” Thereafter, however, Martinez-Esteve met with City officials, and the City rescinded the “roll back” memo effective June 1, 2007. Martinez-Esteve was transferred at that date from his former position as business development coordinator in the Department of Economic Development to a position as project manager in the City Building Department, at the same salary. Throughout his years of service, Martinez-Esteve received positive evaluations and reviews. After his first year of work for the City, he was recommended for the highest possible merit increase.
In a City layoff in October 2009, however, Martinez-Esteve was notified that his employment was terminated. The letter advising him of this made no reference to his civil service status or to any “roll back” right to be restored to his former position. The letter also did not provide a written *297 statement of reasons for the layoff within five days, and an invitation to respond to that statement, as required by the Miami City Charter for “classified” employees.[1]
Martinez-Esteve requested a grievance hearing before the City’s Civil Service Board. At that hearing (October. 20, 2009), the City denied the request, asserting that Martinez-Esteve was an unclassified employee - whose position had been abolished (and not because of any disciplinary reason). Martinez-Esteve’s entitlement to such a hearing was considered by the Civil Service Board in November 2009. The Board voted unanimously to restore Martinez-Esteve to his position as project manager with back pay, concluding that Martinez’s position as a project manager was a classified, not an unclassified, position for purposes of the City Charter. The Board’s written decision was rendered in December 2009.
Over five months later, the City Manager rejected the Board’s ruling, asserting that the position could not be characterized as “classified” because it had not been filled from an eligibility list. Martinez-Esteve established, and the City did not dispute, that the City itself had treated his project manager position as if it was unclassified and had never created an eligibility list for the position.
A month after receiving the City Manager’s ruling, Martinez-Esteve filed a complaint for declaratory judgment, injunctive relief, and monetary damages against the City in the circuit court. Martinez-Esteve and the City ultimately filed cross-motions for summary judgment. Martinez-Es-teve’s motion was granted and final judgment[2] was entered in his favor in April 2012. The City’s cross-motion for summary judgment was denied. The City then initiated this appeal.

Analysis

Each of the City’s arguments on appeal is an issue of law appropriate for summary judgment below and de novo review here. The City’s first argument is that Martinez-Esteve’s circuit court lawsuit should have been dismissed, and that the exclusive venue for his claims of wrongful termination by the City Manager would have been the appellate division of the circuit court. If the quasi-judicial determination by the Civil Service Board had been the controlling ruling, the City would be correct that the determination should be reviewed by the appellate division of the circuit court. Miami-Dade Cnty. v. Moreland, 879 So.2d 28 (Fla. 3d DCA 2004). But the Board’s ruling was not the governmental- action that precipitated Martinez-Esteve’s independent lawsuit.
Rather, the City Manager’s executive action — the unfounded rejection of, and refusal to abide by, the Board’s ruling — was the subject matter of the independent lawsuit, as in City of Miami v. Huttoe, 38 So.2d 819 (Fla.1949). Had the City Manager and City sought review of the Board’s quasi-judicial action by the circuit court appellate division, the City’s argument would be persuasive, and an independent *298 lawsuit by Martinez-Esteve would have been subject to dismissal. But that is not what happened.
The City’s second argument is that Martinez-Esteve cannot be rolled back to a “classified” position because he never applied for, and was never placed on, the eligibility register for a classified position. Section 36(d) of the City Charter requires the City to establish an eligibility list for certain “competitive” classified positions. No such list is required for “noncompetitive” and “labor” classified positions.[3] In the present case, the City simply failed to characterize the position of project manager as competitive or noncompetitive, and it never advised Martinez-Esteve that he would need to apply or be placed on an eligibility list for the position. This fact distinguishes Martinez-Esteve’s case from the holding in Bloodworth v. Suggs, 60 So.2d 768 (Fla.1952) (finding that employees placed into positions in violation of competitive hiring process accrue no rights or entitlement to benefits). In Martinez-Esteve’s case, the position was noncompetitive because the City made it noncompetitive.[4] The City offered, and Martinez-Esteve accepted, the position of project manager in 2007 as a solution to Martinez-Esteve’s concern about the City’s memo returning him to his prior position of project representative in the Department of Economic Development.
Over five years before Martinez-Esteve received his termination notice from the City, the circuit court had ruled in another case that, as a matter of law, the City Charter required the specification of positions that are to be treated as “unclassified,” and that all other positions are “classified.” § 36(c), Miami City Charter. In that case, the court warned the City that it was impermissibly treating many classified positions as unclassified. The City did not amend the pertinent Charter provisions after that ruling, and it did not include Building Department “project manager” in the list of unclassified positions.
Because the Charter did not and does not list the position in question, “project manager,” as an unclassified position, it is a classified position. Id. The Civil Service Board found that Martinez-Esteve was entitled to be rolled back to his position as project manager, and that right (section 8.13, Civil Service Rules and Regulations) applies even if the employee is later promoted into an unclassified position.
So the real question before the trial court and this Court is whether, having failed to comply with its own Charter, the City may now refuse to afford Martinez-Esteve the benefits of the classified position because of the City’s lapses. We agree with Martinez-Esteve that the City is estopped from claiming any advantage based on its own acts and omissions. Timoney v. City of Miami Investigative Panel, 990 So.2d 614, 620 (Fla. 3d DCA 2008).

*299
Conclusion

The City is obligated to comply with its own Charter provisions. Martinez-Esteve properly invoked the jurisdiction of the circuit court to address executive action by the City Manager in contravention of the applicable Charter provisions and the Civil Service Board’s determination. Martinez-E steve’s improper termination has now been revoked, and he has been reinstated to a position that the City Charter concedes is a classified position.
Accordingly, the final judgment and summary judgment in favor of Martinez-Esteve are affirmed, as is the order denying the City’s cross-motion.
SHEPHERD, C.J., concurs.

. Under section 36(c) of the City Charter, civil servants occupy "unclassified” or "classified” positions. Unclassified positions are specifically listed in section 36(c)(1) (including the City Manager ánd staff, department heads and assistants, certain police and fire officials, and City attorneys, for example). City employees who are not in "unclassified” positions are, by definition and in section 36(c)(2), in "classified” positions.

. The final judgment awarded back wages, accrued sick leave and vacation hours, wages through the time of reinstatement, prejudgment interest, medical and dental expenses incurred for Martinez-Esteve and his spouse, and pension benefits calculated for the period between layoff and reinstatement.

. Section 36(c)(2) of the City Charter provides that "competitive” classified positions are those "for which it is practicable to determine the merit and fitness of applicants by competitive examinations.” "Noncompetitive” classified positions are those "requiring peculiar and exceptional qualifications of a scientific, city managerial, professional, or educational character, as may be determined by the rules of the board.” Finally, "labor” classified positions are those for "ordinary unskilled labor.”

. Martinez-Esteve is also correct that this is not a case in which other applicants for the "project manager” position, having been determined to be eligible, are appealing the employment of an applicant who was not eligible.