# Third District Court of Appeal

## State of Florida

Opinion filed November 24, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D11-2839
Consolidated: 3D11-2837
Lower Tribunal No. 10-40398

_____

**Miami-Dade County and Miami-Dade County Office of the Inspector General,**
Appellants,

vs.

**Dade County Police Benevolent Association, a Florida not-for-profit corporation,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Ronald C. Dresnick, Judge.

Sean M. Ellsworth; Office of the Inspector General and Patra Liu; R.A. Cuevas, Jr., Miami-Dade County Attorney, Gerald K. Sanchez and Eric A. Rodriguez, Assistant County Attorneys, for appellants.

Rhea P. Grossman (Ft. Lauderdale), for appellee.

Before SHEPHERD, C.J., and WELLS and LAGOA, JJ.

WELLS, Judge.

Miami-Dade County and the Office of the Inspector General ("OIG") appeal from an order granting summary final judgment in favor of the Dade County Police Benevolent Association ("PBA") on its claims for declaratory relief and mandatory injunction. Specifically, the court below found that section 112.533 of the Florida Statutes confers exclusive authority on the Miami-Dade County Police Department ("MDPD") to investigate any and all complaints against its police officers thereby precluding the OIG from conducting an independent, external investigation of off-duty officers' compliance with County policies and procedures regarding outside employment and disclosure of financial gifts and benefits. Because we cannot agree that this provision or any other portion of the Police Officers' Bill of Rights ("PBR") (sections 112.531 through 122.535 of the Florida Statutes) precludes non-disciplinary investigations that involve police officers, we reverse.

## FACTS AND PROCEDURAL HISTORY

In December of 2009, the OIG commenced an investigation into whether the County mayor's former chief of staff, Denis Morales, and a number of MDPD employees had properly taken leave from work to travel to Panama as paid consultants for a private company, Protection Strategies, Inc., which provided training services for the Panamanian National Police. The investigation focused on

2

whether these individuals had violated County restrictions on outside employment, engaged in questionable leave usage, and improperly obtained and failed to report first-class ticket upgrades for air travel.

According to a draft report issued by the OIG, the investigation, for the most part, consisted of an audit of the County's own records, as well as some records from the MDPD, Protection Strategies, Inc. and the U.S. Immigration and Customs Enforcement Agency, and a few interviews of State Department and American Airlines employees. No police officers were interviewed or subpoenaed. Based on information gleaned from this investigation, the OIG concluded that the individuals involved had: (1) failed to properly complete and submit County-mandated outside employment forms; (2) used a substantial number of administrative leave hours to perform outside employment; (3) "routinely ignored" the MDPD policy prohibiting more than twenty hours of outside employment per payroll week; and (4) obtained and then failed to disclose first-class airline ticket upgrades despite a MDPD policy directive specifically prohibiting such actions. Following these findings, a number of recommendations were made as to how to strengthen County and MDPD policies and procedures governing outside employment. No disciplinary action against any County or MDPD employee was suggested:

[T]he OIG recommends that:

3

- The Mayor's Office and MDPD take immediate steps to improve the process of evaluating requests for outside employment. Those steps should include strict adherence to the requirements that all required forms be fully completed and promptly submitted.

- All Miami-Dade County Departments should consider requiring the submission of a separate form for each outside employer and/or employment activity.

- All Miami-Dade County Departmental Directors, and their subordinate managers and supervisors, conduct the due diligence necessary to determine whether requested outside employment is in the best interests of the County.

- All Miami-Dade County Departments ensure that outside employment is monitored so that leave usage in connection with such employment is properly administered, and that the duration of the employment does not exceed departmental limits.

- All County employees should be reminded that compliance with the *Conflict of Interest and Code of Ethics Ordinance* is mandatory. Employees should also be reminded that numerous resources, including ethics training programs and materials, departmental ethics officers, and the COE are readily available if the need for information about particular compliance issues, such as valuing and reporting the receipt of first-class airline ticket upgrades, should arise.

In July of 2010, the PBA, a labor union representing police officers employed by the MDPD, filed the underlying complaint for declaratory and injunctive relief against the OIG and the County on behalf of three police officers whose activities had been the subject of the OIG investigation, claiming that the County and the OIG had no authority to conduct an investigation into the activities

of MDPD officers as the MDPD "was the 'exclusive' agency responsible for receiving, investigating and determining complaints against its officers pursuant to Section 112.533, Florida Statutes." The trial court ultimately agreed, and relying on the decision of our sister court in <u>Demings v. Orange County Citizens Review Board</u>, 15 So. 3d 604 (Fla. 5th DCA 2009), granted summary judgment precluding issuance of the OIG's report:

> 1. The Miami-Dade Police Department is the exclusive agency responsible for receiving, investigating and determining complaints against its sworn police officers pursuant to Section 112.533, Florida Statutes.
>
> 2. The Miami-Dade County Office of the Inspector General has no jurisdiction to receive, investigate, and publicly report complaints against sworn police personnel for matters arising out of their employment with the Miami-Dade County Police Department. <u>Demings v. Orange County Citizens Review Board</u>, 15 So. 3d 604 (Fla. 5th DCA 2009).
>
> 3. The Miami-Dade County Office of the Inspector General shall remove OIG Report IG09-96 from its website and shall refrain from prospectively publishing said report in its current form. . . .

Because we find that section 112.533 does not preclude an agency other than the MDPD from investigating MDPD police officers for non-disciplinary complaints, and decline to find that <u>Demings</u> requires us to hold otherwise, we disagree and we reverse.

***ANALYSIS***

5

Article VIII, section 11 of the 1885 Florida Constitution authorized creation of a metropolitan government for Dade County and conferred upon county electors the power to adopt a home rule charter pursuant to which the Board of County Commissioners of Dade County could "pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof." See Bd. of Cnty. Comm'rs of Dade Cnty. v. Wilson, 386 So. 2d 556, 559 (Fla. 1980) ("Article VIII, section 11 of the Constitution of 1885 authorized the creation of a metropolitan government for Dade County and granted to the electors of that county the power to adopt a home rule charter."); see also Art. VIII, § 11(1)(b), Fla. Const. (1885) ("[The charter] . . .[m]ay grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof."). Article VIII, section 11 of the 1885 Florida Constitution was expressly incorporated into the 1968 Florida Constitution. See Art. VIII, § 6e, Fla. Const. (1968).

Pursuant to this grant of authority, the County adopted a Home Rule Charter which provides that the County may "[m]ake investigations of county affairs" and "inquire into the conduct . . . of any department or office of the county." Miami-Dade County Home Rule Charter Art. 1, § 1.01A(20). In turn, the Board of County Commissioners established the OIG, giving it "the authority to make

investigations of county affairs and the power to review past, present and proposed County . . . programs, accounts, records, contracts and transactions." § 2-1076(d)(1), Miami-Dade County Code; see Sirgany Int'l, Inc. v. Miami-Dade Cnty., 887 So. 2d 381, 382 (Fla. 3d DCA 2004) (recognizing that "the Miami-Dade Office of Inspector General has the responsibility to investigate various and sundry county matters" pursuant to section 1.01A(20) of the Miami-Dade County Home Rule Charter and section 2-1076 of the Miami-Dade County Code).

The PBA's claim here is that the OIG's investigative authority is unenforceable as to investigations involving police officers because section 112.533 of the Florida Statutes provides the exclusive means for receiving, investigating and determining any and all complaints against MDPD personnel. We disagree. Section 112.533 is not the exclusive means for investigating and determining complaints against the MDPD because neither the charter provision creating the OIG nor the ordinance according it investigative powers is preempted by or conflicts with that provision.

In Phantom of Brevard, Inc. v. Brevard County, 3 So. 3d 309, 314 (2008), the Florida Supreme Court explained that charter county ordinances[1] are

---

[1] We note that while Phantom addresses counties chartered under Article VIII, section 1(g) of the 1968 Florida Constitution, which confers authority on counties governed by that provision to enact ordinances not "*inconsistent*" with general law, Dade County is governed by Article VIII, section 11 of the 1885 Florida Constitution, which states that Dade County's charter and ordinances may not "*conflict*" with general law. See Art. VIII, § 6(e), Fla. Const. (1968)

7

unenforceable when the county: (1) legislates in a subject area that has been

preempted by the State; or (2) enacts an ordinance that directly conflicts with a

statute:

> Pursuant to our Constitution, chartered counties have broad powers of self-government. See art. VIII, § 1(g), Fla. Const. Indeed, under article VIII, section 1(g) of the Florida Constitution, chartered counties have the broad authority to "enact county ordinances not inconsistent with general law." See also David G. Tucker, A Primer on Counties and Municipalities, Part I, Fla. B.J., Mar. 2007, at 49. However, there are two ways that a county ordinance can be inconsistent with state law and therefore unconstitutional. First, a

---

(incorporating Article VIII, section 11 of the 1885 Florida Constitution into Article VIII, section 6(e) of the 1968 Florida Constitution and expressly stating "Article VIII, Section[] . . . 11 . . . of the Constitution of 1885, as amended, shall remain in full force and effect as to each county affected, as if this article had not been adopted, until that county shall expressly adopt a charter or home rule plan pursuant to this article"); see also Wilson, 386 So. 2d at 559; see also Barry v. Garcia, 573 So. 2d 932, 935 (Fla. 3d DCA 1991) ("We first note that Article VIII, Section 6(e), Florida Constitution (1968), specifically exempts Dade County and all municipalities therein, from the provisions of Article VIII, wherein it is precisely stated: 'as if this article had not been adopted.' Municipalities in Dade County are controlled by the provisions of Article VIII, Section 11, of the Florida Constitution of 1885, as amended in 1956, plus the provisions of the Metro Charter, until such time as the 'county shall adopt a charter or home rule plan pursuant to [Article VIII of the Constitution of 1968].' This event has not occurred since the effective date of the 1968 Constitution.") (footnote omitted).

We find this to be a distinction to be without a difference. See Jordan Chapel Freewill Baptist Church v. Dade Cnty., 334 So. 2d 661, 664 (Fla. 3d DCA 1976) (affirming the lower court's determination that "conflict" in Article VIII, section 11 of the 1885 Florida Constitution has been construed to mean "contradictory in the sense of legislative provisions which cannot co-exist."); see also E. B. Elliott Adver. Co. v. Metro. Dade Cnty., 425 F.2d 1141, 1150 (5th Cir. 1970) ("The word 'inconsistent', as used in [section] 6(f) of Article VIII [of the 1968 Florida Constitution] means contradictory in the sense of legislative provisions which cannot co-exist and the same should be true of the word 'conflict' in [section] 11(5) [of Article VIII of the 1885 Florida Constitution].").

county cannot legislate in a field if the subject area has been preempted to the State. See City of Hollywood v. Mulligan, 934 So. 2d 1238, 1243 (Fla. 2006). "Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature." Id. (quoting Phantom of Clearwater, 894 So. 2d at 1018). Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute. See Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996). Local "ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute." Thomas v. State, 614 So. 2d 468, 470 (Fla. 1993); Hillsborough County v. Fla. Rest. Ass'n, 603 So. 2d 587, 591 (Fla. 2d DCA 1992) ("If [a county] has enacted such an inconsistent ordinance, the ordinance must be declared null and void."); see also Rinzler v. Carson, 262 So. 2d 661, 668 (Fla. 1972) ("A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden.").

The charter provision and ordinance at issue here are neither preempted by state law nor in conflict with it.

## *Preemption*

Preemption, we are told, may be either express or implied. See Sarasota Alliance for Fair Elections, Inc. v. Browning, 28 So. 3d 880, 886 (Fla. 2010). Express preemption requires "a specific legislative statement," expressing an intent to completely occupy the field:

Express preemption requires a specific legislative statement; it cannot be implied or inferred. See City of Hollywood v. Mulligan, 934 So. 2d 1238, 1243 (Fla. 2006); Phantom of Clearwater, Inc. v. Pinellas County, 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005), approved in Phantom of Brevard, Inc. v. Brevard County, 3 So. 3d 309 (Fla. 2008). Express preemption of a field by the Legislature must be

9

accomplished by clear language stating that intent. <u>Mulligan</u>, 934 So. 2d at 1243. In cases where the Legislature expressly or specifically preempts an area, there is no problem with ascertaining what the Legislature intended. <u>Tallahassee Mem'l</u>, 681 So. 2d at 831.

<u>Id.</u>

No such intention is evidenced here. To the contrary, while section 112.533(1)(a) does require every law enforcement agency to establish a "system" for receiving, investigating and determining complaints against law enforcement officers and states that this system is to constitute "the" procedure for investigating complaints against law enforcement officers, it also makes clear that this system is to be used for determining disciplinary action:

> Every law enforcement agency . . . shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement . . . officer ***and*** for determining whether to proceed with ***disciplinary*** action or to file ***disciplinary*** charges.

§ 112.533(1)(a), Fla. Stat. (2012) (emphasis added).

In fact, the PBR taken as a whole focuses on an officer's rights during proceedings conducted by his or her employing agency which might lead to ***discipline***. We therefore find no express preemption exists here.

Nor do we find any implied preemption in the PBR so as to preclude entities other than a police officer's employing agency from conducting non-disciplinary investigations. Implied preemption exists "when 'the legislative scheme is so

10

pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted.'" Browning, 28 So. 3d at 886 (quoting Phantom of Clearwater, Inc. v. Pinellas Cnty., 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005)). Here, other than evidencing an intent to leave discipline related investigations to a police officer's employing agency, no other intent is evidenced. See id. (stating that in determining whether the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, a court "must look 'to the provisions of the whole law, and to its object and policy'" (quoting State v. Harden, 938 So. 2d 480, 486 (Fla. 2006))); see, e.g., § 112.532(1)(a), Fla. Stat. (2012) (stating "[w]henever a law enforcement officer . . . is under investigation and subject to interrogation by members of his or her agency for any reason that could lead to disciplinary action, suspension, demotion or dismissal, the interrogation must be under the following conditions"); § 112.532(4)(a), Fla. Stat. (2012) (titled "Notice of disciplinary action"); § 112.532(5), Fla. Stat. (2012) (providing that no law enforcement officer may be "discharged; disciplined; demoted; denied promotion, transfer, or reassignment" in retaliation for exercising his or her rights under the PBR); § 112.532(6), Fla. Stat. (2012) (titled "Limitations period for disciplinary actions"); 112.533(1)(a), Fla. Stat. (2012) (stating that after a complaint is received for investigation by "the" procedure established by the PBR, a number of requirements must be met "prior to

11

the determination as to whether to proceed with disciplinary action or to file disciplinary charges"); § 112.533(2)(a)1-2, Fla. Stat. (2012) (providing that complaints filed against law enforcement officers are confidential until either the investigation is concluded with a finding "not to proceed with disciplinary action or to file charges" or concluded with a finding "to proceed with disciplinary action or to file charges"); §112.535, Fla. Stat. (2012) (stating that the PBR "shall not be construed to restrict or otherwise limit the discretion of the sheriff to take any disciplinary action . . . against a deputy sheriff, including the demotion, reprimand, suspension, or dismissal thereof").

Moreover, we agree that "[i]t generally serves no useful public policy to prohibit local government from deciding local issues." Browning, 28 So. 3d at 887 (quoting Browning v. Sarasota Alliance for Fair Elections, Inc., 968 So. 2d 637, 646 (Fla. 2d DCA 2007), quashed on other grounds, Browning, 28 So. 3d at 887-88). That is certainly so in this case where we can see no useful public policy in precluding a local government from investigating compliance with its own policies and procedures for the purpose of strengthening compliance with them. We therefore conclude that the legislature has not clearly preempted local regulation of the field of non-disciplinary investigations involving police officers so as to invoke the "severely and strongly disfavored doctrine of 'implied preemption.'" Exile v. Miami-Dade Cnty., 35 So. 3d 118, 119 (Fla. 3d DCA 2010).

12

### *Conflict*

We also discern no conflict between the County ordinance and the PBR because as the Florida Supreme Court in <u>Phantom of Brevard, Inc.</u>, has confirmed, a conflict between an ordinance and statute will not be found where the ordinance and the statute can coexist such that compliance with one does not require violation of the other:

> There is conflict between a local ordinance and a state statute when the local ordinance cannot coexist with the state statute. <u>See City of Hollywood</u>, 934 So. 2d at 1246; <u>see also</u> <u>State ex rel. Dade County v. Brautigam</u>, 224 So. 2d 688, 692 (Fla. 1969) (explaining that "inconsistent" as used in article VIII, section 6(f) of the Florida Constitution "means contradictory in the sense of legislative provisions which cannot coexist"). Stated otherwise, "[t]he test for conflict is whether 'in order to comply with one provision, a violation of the other is required.' " <u>Browning v. Sarasota Alliance for Fair Elections, Inc.</u>, 968 So. 2d 637, 649 (Fla. 2d DCA 2007) (quoting <u>Phantom of Clearwater</u>, 894 So. 2d at 1020), <u>review granted</u>, No. SC07-2074 (Fla. Nov. 29, 2007).

<u>Phantom of Brevard, Inc.</u>, 3 So. 3d at 314.

We find nothing in section 2-1076(d)(1) of the Miami-Dade County Code that conflicts with section 112.533 or any other portion of the PBR. The ordinance generally authorizes the OIG to conduct investigations of County employees; it does not confer authority to conduct investigations of police officers for imposition of discipline, nor does it attempt to override the authority to do so conferred upon an officer's employing agency under the PBR. And, while section 112.533(1)(b)1

13

does require the County to forward a copy of complaints against law enforcement officers to the MDPD, it does not require the County to abandon its investigation into non-disciplinary policy compliance irrespective of any potential MDPD disciplinary investigation. We therefore find that the ordinance and the PBR may be reconciled and are not inconsistent with one another.

In short, and as this court under an admittedly different set of facts and circumstances has already confirmed, section 112.533 does not apply to an independent, external investigation when that investigation is not being conducted for any reason which could lead to disciplinary action, demotion or dismissal. See Timoney v. City of Miami Civilian Investigative Panel, 990 So. 2d 614, 619 (Fla. 2d DCA 2008). As our decision in D'Agastino v. City of Miami, 38 Fla. L. Weekly D167 (Fla. 3d DCA Jan. 23, 2013) confirms, reliance on the decision from our sister court in Demings to support a contrary view is misplaced. Rather, "we prefer and remain quite comfortable with the observation made not so long ago . . . in Timoney" that the PBR concerns internal investigations conducted by a police department of its own officers for the purpose of determining whether to impose discipline, see id. at D169, and that its purpose is not to preclude independent, external investigations conducted by outside entities for the purpose of setting and enforcing policy or for determining best practices. We therefore now, once again, reiterate our statement in Timoney that the PBR does not preclude an independent,

14

external investigation of MDPD personnel which does not contemplate disciplinary action, such as the one the OIG conducted here.

## *CONCLUSION*

Accordingly, we reverse the order granting final summary judgment in favor of the PBA and remand with instructions that final summary judgment be granted in favor of the County and the OIG.