ROTHENBERG, J.
(concurring, in part, dissenting, in part).
The majority affirms the final judgment and summary judgment entered in favor of Jorge Martinez-Esteve (“Martinez-Es-teve”) in his circuit court lawsuit against the City of Miami (‘City”) regarding his layoff in October 2009. Although I agree with the majority’s conclusion that Martinez-Esteve properly invoked the jurisdiction of the circuit court, I disagree with the majority’s affirmance of the trial court’s ruling that requires the City to “roll back”[5] .Martinez-Esteve to the position of project manager or to a comparable position within the City.
The primary issue addressed in the trial court was whether Martinez-Esteve was entitled to the benefits afforded classified employees after he was laid off by the City from a classified position he obtained without complying with the requirements specified by the City of Miami Charter (“City Charter”). Despite Martinez-Esteve’s failure to comply with the City Charter’s requirements for placement in a non-competitive classified position when he was placed in the classified position of a project manager, the trial court entered a final judgment in favor of Martinez-Esteve, granting him the benefits of a qualifying classified employee, and ordering the City to reinstate him to the classified position he held when he was laid off as a project manager, and, if that position was not available, to reinstate him to a comparable position at the same rank and pay grade.
In addressing this issue, the majority determined, and I agree, that the position of project manager in the City’s Building Department is a “classified,” not an “unclassified,” position because the position is not listed as “unclassified” in section 36(c)(1) of the City Charter, and therefore, by default, the position is deemed to be “classified.” § 36(c), City of Miami Charter (“Unclassified and classified service. The civil service of the city is hereby divided into the unclassified and the classified service.”); § 36(c)(1), City of Miami Charter (specifically listing positions included in the unclassified service); § 36(c)(2), City of Miami Charter (“The classified services shall include all positions not specifically included by this City Charter in the unclassified service.... ”).
Pursuant to the Civil Service Rules and the City Charter, to be considered for a classified position, the applicant must comply with certain eligibility requirements, which include submission of an application, screening, arid if the applicant is determined to be qualified and “eligible,” placement on an “eligibility register,” which remains active for one year. Competitive *300 classified positions also require a written examination and the eligibility register for classified positions places the list of qualified applicants in the order of how well the applicant performed on the written examination. If the classified position is a noncompetitive classified position, the ranking and order of the names appearing on the eligibility list is determined by the scores assessed during the interview process. The position Martinez-Esteve held as a project manager was a non-competitive classified position. Thus, he was required to go through the interview process, be ranked, and placed on a noncompetitive eligibility list in order to be considered for and placed in the classified position of project manager. It is undisputed that Martinez-Esteve did not go through the interview process, he was not scored and ranked, and he was not selected from an eligibility list when he was placed in the project manager position. He was simply selected by the City Manager to serve in that capacity, and he served as a project manager for approximately two-and-one-half years before he was laid off.
Section 36(c)(2)(A)-(C) of the City Charter provides that “classified service” consists of three distinct and defined “classes” — competitive, noncompetitive, and labor. The majority correctly acknowledges that under the City Charter, the City is required to establish an “eligibility list” for “competitive” classified positions. The majority, however, incorrectly asserts that the .City Charter does not require the City to establish an “eligibility list” for “noncompetitive” and “labor” classified positions. Section 36(d) of the City Charter provides that the “chief examiner shall ... maintain lists of eligibles of each class of the services of those meeting the requirements of said regulations,” and the “[pjositions in the classified service shall be filled from such eligible lists upon requisition from and after consultation with the city manager.” (emphasis added). Section 36(d) does not distinguish between the three classes within the “classified service,” and therefore, contrary to the majority’s assertion, all classified positions, even “noncompetitive” and “labor” classified positions, are to be filled from an eligibility list.[6] Because Martinez-Esteve was never placed on an eligibility list, his placement into the position of project manager clearly violated the City Charter.
Thus, the question before this Court is whether Martinez-Esteve, who was placed in a classified position without satisfying the requirements of the City Charter, should receive certain benefits afforded to classified employees, which in this case are seniority credits, during the period he worked as a project manager. Based on the Florida Supreme Court’s decision in Bloodworth v. Suggs, 60 So.2d 768 (Fla.1952), the answer to that question is “no.” Martinez-Esteve, who did not comply with the City Charter when obtaining his classified position, is not entitled to the benefits afforded to classified employees, and therefore, the final judgment under review should be reversed.
In Bloodworth, the Florida Supreme Court addressed a similar situation. When the civil service rules were adopted, members of the police force, except for the Chief, were required to be selected from a “list of eligibles prepared by the civil service board.” Id. at 768. However, in 1946, the Civil Service Board discontinued the examination process for the position of detective, and commencing in 1947, the City Manager, with the Civil Service *301 Board’s approval, assigned seventeen patrolmen to plain-clothes duty in the Detectives Bureau. Id. These plain-clothed patrolmen did not receive any additional pay, but they were provided with a monthly clothing allowance, and they were notified they “may at any time be assigned back to duty as a Uniformed Patrolman.” Id.
In 1951, the Civil Service Board decided to re-establish the system of open competitive examinations for filling open detective positions and to abolish the City Manager’s practice of assigning policemen to detective positions without selecting them from an eligibility list prepared by the Civil Service Board. Id. Thereafter, the City Manager informed the Executive Secretary of the Civil Service Board that he was granting “permanent detective appointment” to those individuals who had served as detectives for one year or more. Id. The seventeen policemen who had previously been assigned to the Detectives Bureau without being placed on an eligibility list or taking an examination had served for varying time periods of from one to four years in the Detectives Bureau.
In response, the Civil Service Board and J.P. Suggs, on behalf of civil service employees of the police department, filed suit against the City Manager, Mr. Blood-worth, seeking invalidation of these appointments. Id. The trial court invalidated the appointments, and the City Manager appealed. Id.
In affirming the trial court’s invalidation of the appointments, the Florida Supreme Court noted that the City Charter required that all “members of the police force, other than the Chief, shall be selected from the list of eligibles prepared by the civil service board ...,” and that the City Manager acknowledged that the patrolmen he gave permanent detective status to, did not, as was required, take a competitive examination and they were not placed On an eligibility list prior to their assignment to the Detectives Bureau. Id. at 769. The Florida Supreme Court therefore concluded that, although the seventeen policemen involved demonstrated “outstanding proficiency and ability in the performance of the duties of detectives, and they could no doubt continue to perform these duties with the same degree of efficiency,” id. at 770, because they received their positions without complying with the existing rules, they were not entitled to permanent appointment as detectives. Specifically, the Florida Supreme Court noted the following:
This is, however, a government of laws and not of men, and we are compelled to recognize that, under the present law, these 17 policemen-regardless of their outstanding record of achievement-have not yet obtained a right to permanent appointment as ‘detectives,’ under the civil service laws and rules now existing and controlling.

Id.

Bloodworth and the instant case are factually similar in that the policemen in Bloodworth and Martinez-Esteve in the instant ease were all given positions without requiring them to comply with the competitive hiring process specified in the City Charter. Specifically, in both cases, the employees were never placed on a “list of eligibles” prior to being placed into their respective positions. Thus, based on Bloodworth, because Martinez-Esteve obtained his classified position without complying with the hiring process required by the City Charter, he accrued no rights or entitlement to benefits generally granted to classified service employees. See also King v. Harris, 49 So.2d 803 (Fla.1951) (holding that a Panama City employee who was employed without qualifying for civil service status under Panama City’s Civil Service Act, was not entitled to civil ser *302 vice status; noting that to hold that the employee “was entitled to civil service status would flout the mandatory requirements of [the Civil Service Act]”).
The majority’s reliance on Timoney v. City of Miami Investigative Panel, 990 So.2d 614, 620 (Fla. 3d DCA 2008), for the proposition that the City should be es-topped from denying Martinez-Esteve the benefits of the classified position he received without complying with the City Charter because the City offered Martinez-Esteve the position without requiring him to comply with the City Charter, is also respectfully misplaced. In King, the Florida Supreme Court concluded that, although King had served in his position as a civil service employee for two years, and section 22 of the Civil Service Act of Panama City provided that if the employee was not discharged within a six-month probationary period, the employee’s promotion, appointment, or employment in the civil service position would be deemed complete and entitle him to the associated benefits, because King did not comply with the qualifying requirements for such a position, he was not entitled to civil service status. In other words, although Panama City placed King in a civil service position without requiring him to comply with the eligibility requirements, and allowed him to stay in that position for two years, well past the six-month probationary period, Panama City was not estopped from raising King’s ineligibility. Thus, Panama City’s firing of King was upheld.
To conclude otherwise would ignore the fact that Martinez-Esteve knew he was required to be selected from an eligibility list to be placed in and to receive the benefits of a classified position. Because the City treated the project manager position as an unclassified position, when Martinez-Esteve accepted the position he believed it was an unclassified position for which he would not receive any of the benefits afforded employees serving in classified positions. Thus, Martinez-Esteve should be equally es-topped from receiving benefits he did not qualify to receive and which he never expected to receive.
Accordingly, the trial court’s final judgment reinstating Martinez-Esteve to the position of project manager or to a comparable position and awarding him monetary relief was error, and it is in direct conflict with the Florida Supreme Court’s holdings in Bloodworth and King. I, therefore, respectfully dissent from the portion of the majority’s opinion which affirms the final judgment.

. The trial court “reinstated” Martinez-Es-teve to the position he held when laid off in October 2009 (project manager) or to a comparable position at the same rank and pay. In addition to reinstatement, the trial court awarded Martinez-Esteve monetary relief, such as back pay.

. This interpretation is consistent with the testimony of the City's Senior Personnel Officer.