# Third District Court of Appeal

## State of Florida

Opinion filed March 16, 2016.

————————

No. 3D10-2704
Lower Tribunal Nos. 09-40869, 09-46161

————————

**Freddy D'Agastino, et al.,**
Appellants,

vs.

**The City of Miami, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Amy Steele Donner, Judge.

Ronald J. Cohen (Fort Lauderdale), for appellants.

Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney; Charles C. Mays; Weiss Serota Helfman Cole & Bierman, P.L., and John J. Quick, for appellees.

Before WELLS, SHEPHERD, and ROTHENBERG, JJ.

SHEPHERD, J.

**ON MOTION FOR REHEARING AND CERTIFICATION**

Appellant's motion for rehearing and for certification are denied. On our own motion, however, we withdraw our previous opinion issued on January 23, 2013, and substitute the following corrected opinion for the original.

This is an appeal from a final judgment entered on cross motions for summary judgment. Appellants contend, as they argued below, that section 112.533(1), Florida Statutes (2007), provides the exclusive means to investigate allegations of police misconduct, and the City of Miami Ordinance creating a Civilian Investigative Panel (CIP) to oversee the sworn police department directly conflicts with the statute and therefore must fall. For the reasons set forth below, we disagree.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a civilian complaint lodged with the CIP that alleged professional misconduct during a traffic stop conducted by City of Miami Police Lieutenant Freddy D'Agastino. After the City of Miami Police Department concluded its investigation,[1] the CIP subpoenaed Lieutenant D'Agastino to testify before its Complaint Committee regarding the allegations. In response, Lieutenant D'Agastino filed a petition in the trial court seeking to quash the subpoena and obtain a protective order against his having to testify. He alleged that section

---

[1] The Internal Affairs department ultimately determined the allegations in the complaint were "inconclusive."

112.533(1) granted the police department exclusive authority to investigate allegations of police misconduct. Section 112.533(1)(a) provides: "Every law enforcement agency . . . shall establish and put into operation a system for the . . . investigation . . . of complaints received by such agency from any person, which shall be **the procedure** for investigating a complaint against a law enforcement . . . officer . . . notwithstanding any other law or ordinance to the contrary." (emphasis added).

The City of Miami intervened, and was served separately with a declaratory action by the Fraternal Order of Police seeking to declare unconstitutional those ordinances empowering the CIP to investigate the City's law enforcement officers. The CIP, in turn, joined that action. The two cases ultimately were consolidated and each party moved for summary judgment. The trial court granted the motions filed by the City and the CIP, relying upon Timoney v. City of Miami Civilian Investigative Panel, 990 So. 2d 614 (Fla. 3d DCA 2008). Appellants contend Timoney is distinguishable and that Demings v. Orange County Citizens Review Board, 15 So. 3d 604 (Fla. 5th DCA 2009), controls.

**SCOPE OF REVIEW**

The City of Miami is a municipality located in Miami-Dade County. Miami-Dade County is a constitutionally authorized home rule county, created pursuant to an amendment to the Florida Constitution, adopted at the general

3

election held on November 6, 1956.  See Article VIII, §6(e), Fla. Const. (1968), incorporating Article VIII, §11, Fla. Const. (1885).  Pursuant to this constitutional provision, Miami-Dade County is authorized to create, abolish or modify the boundaries of all municipal corporations, and provide the method by which each municipal corporation "shall have the power to make, amend or repeal its own charter," Art. VIII, §11(c), (g), Fla. Const. (1885), provided, however, that "Nothing in this section shall limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County . . . or to any municipality in Dade County." Art. VIII, §11(5), Fla. Const. (1885).  This section of Article VIII of the Florida Constitution of 1885 further provides, "[N]or shall the charter of any municipality in Dade County conflict with this Constitution or any such applicable general law." Id.  The next section of Article VIII, section 11 of the 1885 Constitution repeats these admonitions.  Art. VIII, §11(6), Fla. Const. (1885). Finally, although the chief purpose of Article VIII, section 11 of the 1885 Constitution was to authorize Miami-Dade County to adopt a home rule charter of its own, the legislature and electors of the state recognized that these admonitions would apply to municipal ordinances as well.  See Article VIII, § 11(9), Fla. Const. 1885 ("[I]t is further declared to be the intent of the Legislature and of the electors of the State of Florida that the provisions of this Constitution and general laws which shall relate to Dade County … or to any municipality in Dade County …

4

enacted pursuant thereto by the Legislature shall be the supreme law in Dade County, Florida."). We accordingly restrict our review to a determination of whether the CIP investigation conflicts with general law.

## ANALYSIS

In 2001, the City of Miami Charter was amended to include a mandate that the city commission create a civilian investigative panel to oversee the sworn police department. City of Miami Charter, § 51. The following year, the commission approved an ordinance creating the CIP in accordance with the Charter's mandate. Its express purpose is to "[a]ct as independent civilian oversight of the sworn police department." Miami, Fla., Code art. II, § 11.5-27(1) (2002). In furtherance of this purpose, the CIP is authorized to "[c]onduct investigations, inquiries and public hearings to make factual determinations, [and] facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn [police] officer." Id. Particularly at issue is the CIP's subpoena power, through which it can compel a sworn police officer or other witness to testify before it. Id. at § 11.5-32. Lieutenant D'Agastino contends the Police Officers' Bill of Rights (PBR), set forth under sections 112.532-533 of the Florida Statutes, provides the sole procedure for investigating police misconduct. To the extent the City charged the CIP with

5

investigatory power, he argues it directly conflicts with the statute and is therefore expressly prohibited.

A side-by-side comparison of the two laws reveals the pertinent provisions to be as follows:

| § 112.533, Fla. Stat. (2007)<br>Receipt and processing of complaints.— | Art. II, § 11.5-27<br>Purposes, powers and duties. |
|---|---|
| (1)(a) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary. | The purpose, powers and duties of the CIP are to:<br><br>(1) Act as independent civilian oversight of the sworn police department;<br><br>. . . . |
| . . . . | (5) Conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department;<br><br>. . . . |
| (b)1. Any political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer must within 5 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation. | (9) Make recommendations as to the disposition of alleged incidents of police misconduct, to which the police chief is required to respond within 30 days[.] |
| 2. For purposes of this paragraph, the term "political subdivision" means a separate agency or unit of local | |

government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission, consolidated government, county, department, district, institution, metropolitan government, municipality, office, officer, public corporation, town, or village.

A brief perusal of these provisions makes clear the PBR does not purport to expressly preempt other investigative bodies or means of oversight. Lieutenant D'Agastino concedes as much. Thus, we proceed to our next task, a determination whether the CIP "conflicts" with the PBR.

Conflict between legislative provisions is said to exist "if, in order to comply with one provision, a violation of the other is required." Jordan Freewill Baptist Church v. Dade County, 334 So. 2d 661, 664 (Fla. 3d DCA 1976). Some federal courts have further refined the inquiry to ask whether the local action 'frustrates the purpose' of a state statute. See e.g., Bravman v. Baxter Healthcare Corp., 842 F. Supp. 747, 753 (S.D.N.Y. 1994); see also Hines v. Davidowitz, 312 U.S. 52, 67 (1941). One of our colleagues has urged the explicit recognition and use of this test in our state district courts of appeal, suggesting that it has been impliedly used in his court already. See Judge James R. Wolf and Sarah Harley Bolinder, "The Effectiveness of Home Rule: A Preemption and Conflict Analysis," 83 Fla. Bar Jnl, 92, 93 (June 2009) (citing City of Jacksonville v. American Environmental

7

Services, Inc., 699 So. 2d 255 (Fla. 1st DCA 1997)). Other courts ask simply whether the provisions can "co-exist." Phantom of Brevard Cnty., Inc. v. Brevard Cnty., 3 So. 3d 309, 315 (Fla. 2008) ("There is conflict between a local ordinance and a state statute when the local ordinance cannot coexist with the state statute."). In reality, these so-called "tests" are just diagnostic tools available to assist our decision-making.  Under all of them, our proper role is to harmonize and give full effect to both legislative prerogatives if we can.  See City of Hollywood v. Mulligan, 934 So. 2d 1238, 1244-45 (Fla. 2006) ("When possible, 'we must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'") (quoting Clines v. State, 912 So. 2d 550, 557 (Fla. 2005)).  Mindful of this guidance and the limited scope of our review, we have little difficulty finding the provisions of the CIP and the PBR to be readily reconcilable.

The City Charter and the CIP's enabling ordinance clearly establish the CIP acts independently of the police department and other city officials.  City of Miami Charter § 51(E)(1); Miami, Fla., Code, art. II, § 11.5-27.  Indeed, the CIP's independence is central to its purpose, as expressed by its mandate: to provide "**independent** civilian oversight of the sworn police department."  City of Miami Charter § 51 (emphasis added).

8

The CIP is granted limited power to act in response to its investigations, and may only propose recommendations to the City Manager or Police Chief. City of Miami Charter § 51(E)(1)–(3); Miami, Fla., Code, art. II, § 11.5-27. The CIP has no management authority over City police officers. It cannot discipline, suspend, demote, discharge, or transfer city police officers. Management decisions as a result of police misconduct are reserved to city police administrators, in keeping with the structure of the PBR. Indeed, the CIP ordinance provides that "[p]olicies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes and any other applicable laws." Miami, Fla., Code, art. II, § 11.5-33(e) (2002).

Additionally, the City Charter provides the CIP "shall not interfere with any pending or potential criminal investigation or prosecution." City of Miami Charter § 51(D). The CIP ordinance further dictates the CIP shall "[e]xercise its powers so as to not interfere with any ongoing investigations and conduct its activities consistent with applicable law . . . and labor contracts." Miami, Fla., Code, art. II, § 11.5-27(2). To that end, the CIP is restricted from investigating a complaint until "after determination by its independent counsel, who shall be required to consult with the appropriate prosecutorial agencies, [so] that an investigation will not interfere with any pending criminal investigation." Miami, Fla., Code, art. II, § 11.5-31(2)(a). Finally, the Ordinance provides that "[a] decision of the CIP to

9

proceed with an investigation may be challenged by any agency engaged in such investigation or prosecution by seeking judicial order in law or equity in a court of competent jurisdiction," and that "[w]ritten notification of such challenge to the CIP shall stay the investigation for 48 hours permitting the agency to obtain such a judicial order." Id.

In contrast, the PBR creates a process for **internal** investigations by the police department to determine whether to proceed with disciplinary charges. To this end, section 112.532(1) of the Florida Statutes (2007), provides:

> **(1) RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION.**—Whenever a law enforcement officer or correctional officer is **under investigation and subject to interrogation by members of his or her agency for any reason that could lead to disciplinary action, suspension, demotion, or dismissal**, the interrogation must be conducted under the following conditions. . . .

(emphasis added). The rights provided under this provision are limited to instances of investigation and interrogation by members of the officer's employing law enforcement agency. This provision makes no reference to external citizen investigations, and therefore does not apply in that context.

Section 112.533(1)(a) provides:

> Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and **for**

10

> **determining whether to proceed with disciplinary action or to file disciplinary charges**, notwithstanding any other law or ordinance to the contrary.

(emphasis added). The Appellants urge a reading of section 112.533(1)(a) that would vest law enforcement agencies with the exclusive authority to investigate <u>any</u> complaint against their sworn officers. The City, to the contrary, reads section 112.533(1) to apply only to employee discipline. It urges that section 112.533(1) does not preclude the formation of an independent and external citizens review panel, such as the CIP, to investigate alleged police misconduct and make proposed recommendations. We believe the City has the better argument. The absence of any authority granted to the CIP to make the sort of police management decisions addressed in Chapter 112, or to affect the obligations that chapter imposes on the Miami Police Department and its investigators, makes manifest the absence of a conflict between the CIP ordinance and Chapter 112.

Appellants, Lieutenant D'Agastino and the Fraternal Order of Police urge us to follow the rationale outlined in <u>Demings</u>, supra. There, the Orange County Sheriff and one of his deputies challenged the authority of Orange County's CIP equivalent, the Citizen's Review Board ("CRB"), to subpoena deputies or otherwise investigate civilian complaints of excessive use of force by the department's sworn deputies. Noting the Orange County Sheriff is a constitutionally elected officer possessed of a portion of the sovereign power of the

11

state, the Fifth District Court of Appeal, in the decisive holding in the case, determined the Sheriff could not be required to account for his activities to a locally-created board. The court explained:

> As an independent constitutional officer, the Sheriff does not derive his authority from the County's charter or the board of county commissioners, and is neither generally accountable to the Board for his conduct in office nor subject to the board's direction in the fulfillment of his duties. Art. VIII, § 1(d), Fla. Const. In the event of misconduct or misfeasance by the Sheriff, it is Florida's governor who is authorized to suspend the Sheriff from office—and not the County's governing board. Art. IV, § 7(a), Fla. Const. And, ultimately, the Sheriff is independently accountable to the electorate of Orange County. Art. VIII, § 1(d), Fla. Const.; State v. Sheats, 78 Fla. 583, 83 So. 508 (1919) (explaining that the term "office" as used in the Florida Constitution "implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office" or "independent authority of a governmental nature"). Given this constitutional framework, we [] find that the County cannot interfere with the Sheriff's independent exercise of his duty to investigate misconduct by his deputies either by forcing him to appoint members to the CRB or by mandating his participation in CRB proceedings, either in person or through his deputies or employees.

Demings, 15 So. 3d at 610-11. Although the Fifth District Court of Appeal seemed to recognize this was the dispositive issue in the case, see Id. at 609 ("[T]he question presented is whether the County charter and ordinance creating and authorizing an independent board to review citizen complaints against Sheriff's deputies, without first abolishing the constitutional office of sheriff, is 'inconsistent' with general law."),[2] the court also addressed whether the conduct of

---

[2] Because Orange County is a charter county, it is authorized by Article VIII

12

the board was "inconsistent" with section 112.533. Id.[3]  We simply disagree with the judgment of the Fifth District Court of Appeal on this point.  Rather, we prefer and remain quite comfortable with the observation made not so long ago by another panel of this court in Timoney, relating to the issue before us today, namely that Chapter 112 "concerns **internal investigations** conducted by a police department of its own officers" and the PBR "sets forth the procedures to be followed **by the police department** for interrogation of a law enforcement officer under investigation **by the police department**[,]"  Timoney, 990 So. 2d at 618 (first emphasis added), while the CIP's authority "extends to **independent, external investigations**."  Id. at 619 (emphasis added).  Hence, following Timoney, we conclude the CIP provides a distinct function that is not prohibited by

section 1(d) of the Florida Constitution to abolish the constitutionally elected office of sheriff by charter amendment or special law approved by a vote of the electors so long as all of the duties of the office are transferred to another office.

[3]Orange County's "conflict" provision emanates from Article VIII, section 1(g) of the Florida Constitution, which states: "Counties operating under county charters shall have all powers of local self-government **not inconsistent** with general law . . . . The governing body of a county operating under a charter may enact county ordinances **not inconsistent** with general law." Id. (emphasis added).  The terms are given the same construction in local government law in this state.  See Jordan Chapel Freewill Baptist Church, 334 So. 2d at 664 (affirming the lower court's determination that "conflict" in Article VIII, section 11 of the 1885 Florida Constitution has been construed to mean "contradictory in the sense of legislative provisions which cannot co-exist."); see also E.B. Elliott Adver. Co. v. Metro. Dade Cnty., 425 F.2d 1141, 1150 (5th Cir. 1970) ("The word 'inconsistent' means contradictory in the sense of legislative provisions which cannot co-exist and the same should be true of the word 'conflict' in [section] 11(5) [of Article VIII of the 1885 Florida Constitution].").

the rights and restrictions set forth under Chapter 112. To the extent this observation was non-dispositive in Timoney, we adopt it here in support of the rationale already provided for affirmance.

We affirm the decision of the trial court.

WELLS, J., concurs.

Freddy D'Agastino, et al. v. The City of Miami, et al.
Case No. 3D10-2704

ROTHENBERG, J. (dissenting).

Because the City of Miami's ordinance is preempted by and in conflict with state law, it is unconstitutional. I, therefore, dissent from the majority opinion upholding the ordinance.

I agree that this case is governed by Article VIII, section 11 of the 1885 Florida Constitution, as amended in 1968, which authorized the creation of a metropolitan government for Dade County (now Miami-Dade County) and granted the county electors the power to adopt a home rule charter. Article VIII, section 11(1)(b) of the 1885 Florida Constitution authorized the charter to grant the Board of County Commissioners of Dade County the power to pass ordinances relating to

14

the affairs, property, and government of Dade County and to provide appropriate penalties for violation of its ordinances.

This grant of power to the Board of County Commissioners, however, does not "limit or restrict the power of the Legislature to enact general laws which relate to Dade County . . . or any municipality in Dade County . . . relating to county or municipal affairs . . . ." Art. VIII, § 11(6). Article VIII, section 11(6) further provides that, the general laws enacted by the Florida Legislature "shall supersede any part or portion of the home rule charter . . . in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith . . . ." Id. Thus, section 11(6) preserves the Legislature's right to enact laws applicable to Miami-Dade County and the municipalities within Miami-Dade County and limits the power of Miami-Dade County and its municipalities to enact charters or laws that are not in conflict with general (statutory) law. See also Article VIII, § 1(g), Fla. Const. (providing that under the Florida Constitution, county charters "**shall have all powers of local self-government not inconsistent with general law**") (emphasis added); Article VIII, § 2(b), Fla. Const. (granting municipalities broad powers to conduct municipal government, perform municipal functions, and render municipal services "**except as otherwise provided by law**") (emphasis added).

In recognition of the powers granted and the limitations placed on local

governments by the Florida Constitution, the Florida Legislature adopted the Florida Municipal Home Rule Act in 1973. Sections 166.021(1), (3), and (4), Florida Statutes (1973), prohibit the exercise of municipal powers where expressly prohibited by the constitution, general or special law, or where expressly preempted to state and county government.

> (1) As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, **except when expressly prohibited by law**.
> . . . .
> (3) The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
> . . . .
> (c) Any subject expressly preempted to state or county government by the constitution or by general law. . . .
> (4) The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes **not expressly prohibited by the constitution, general or special law**, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. . . .

§ 166.021, Fla. Stat. (1973) (emphasis added).

The language found in Article VIII, section 2(b) of the Florida Constitution, "except as otherwise provided by law," has been interpreted as limiting municipal

16

power where: (1) state law expressly preempts the action, or (2) there exists a direct conflict between the local ordinance and a state statute. Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996); see also Sarasota Alliance for Fair Elections, Inc. v. Browning, 28 So. 3d 880, 886 (Fla. 2010) (holding that "[a] local government enactment may be inconsistent with state law if (1) the Legislature has preempted a particular subject area or (2) the local enactment conflicts with a state statute") (internal quotations omitted). Because the City of Miami's ordinance is expressly preempted by Florida law and is in direct conflict with Florida statutes, the ordinance is unconstitutional.

## ANALYSIS

### A.    The City of Miami's Ordinance

In 2002, the City of Miami passed an ordinance creating a civilian investigative panel ("the CIP") to "[c]onduct investigations, inquiries and public hearings to make factual determinations, facilitate resolutions and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department[.]" Miami, Fla., Code Art. II, § 11.5-27(5).

Specifically, article II, section 11.5-27 of the City of Miami's Code provides:

The purpose, powers and duties of the CIP are to:

> (1) Act as independent civilian oversight of the sworn police department;
> (2) Exercise its powers so as to not interfere with any ongoing investigations and conduct its activities consistent with applicable law . . . ;
> . . . .
> (5) Conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department;
> (6) Request issuance of subpoenas . . . for the purpose of obtaining evidence from witnesses and production of books, papers, and other evidence . . . .
> . . . .
> (8) Issue reports to the mayor, city commission, city attorney, city manager, chief of police and the public;
> (9)  Make recommendations as to the disposition of alleged incidents of police misconduct, to which the police chief is required to respond within 30 days[.]

The City of Miami's code further provides that "[p]olicies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes . . . ."  Miami, Fla., Code Art. II, § 11.5-33(e).  As will be discussed in detail below, the City of Miami's ordinance is expressly preempted by, and is in direct conflict with, Chapter 112.

B.     **Chapter 112, Part VI, Law Enforcement Officers' and Correctional Officers' Bill of Rights**

Chapter 112, Part VI, governs the rights of law enforcement officers while under investigation.  Section 112.531(1) defines a "law enforcement officer" as:

18

[A]ny person, other than a chief of police, who is employed full time by any municipality or the state or any political subdivision thereof and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state; and includes any person who is appointed by the sheriff as a deputy sheriff pursuant to s. 30.07.

Lt. D'Agastino, the appellant, who was subpoenaed to appear before the CIP to answer questions and provide testimony to the CIP Committee regarding a civilian complaint alleging he committed misconduct during a traffic stop, is, without dispute, a law enforcement officer under section 112.531(1). Lt. D'Agastino, therefore, is entitled to all of the safeguards and protections set forth in Chapter 112, Part VI, and specifically sections 112.532 and 112.533, commonly referred to as the Law Enforcement Officers' Bill of Rights.

Section 112.532 identifies the rights granted to law enforcement and correctional officers while under investigation, and begins with the following preamble. "**All law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or a correctional agency shall have the following rights and privileges**[.]" (emphasis added). Subsection (1) identifies the rights of law enforcement and correctional officers while under investigation; subsection (2) addresses who shall serve on complaint boards; subsection (3) provides a remedy for law enforcement and correctional officers who are knowingly falsely accused; subsection (4) specifies the notice requirements; subsection (5) protects law enforcement and correctional officers

19

from retaliation for exercising their rights; and subsection (6) provides a 180-day time limitation to complete an investigation.

The rights specifically provided in section 112.532(1) are as follows:

**(1)** RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION. —Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason that could lead to disciplinary action, suspension, demotion, or dismissal, the interrogation must be conducted under the following conditions:

(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the law enforcement officer or correctional officer is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required.

(b) The interrogation shall take place either at the office of the command of the investigating officer or at the office of the local precinct, police unit, or correctional unit in which the incident allegedly occurred, as designated by the investigating officer or agency.

(c) The law enforcement officer or correctional officer under investigation shall be informed of the rank, name, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions directed to the officer under interrogation shall be asked by or through one interrogator during any one investigative interrogation, unless specifically waived by the officer under investigation.

(d) The law enforcement officer or correctional officer under investigation must be informed of the nature of the investigation before any interrogation begins, and he or she must be informed of the names of all complainants. All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer. The complaint, all witness statements, including all other existing subject officer statements, and all other existing evidence, including, but not limited to, incident reports, GPS locator information, and audio or video recordings relating to the incident under investigation, must be provided to each officer who is the subject of the complaint before the

20

beginning of any investigative interview of that officer. An officer, after being informed of the right to review witness statements, may voluntarily waive the provisions of this paragraph and provide a voluntary statement at any time.

(e) Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.

(f) The law enforcement officer or correctional officer under interrogation may not be subjected to offensive language or be threatened with transfer, dismissal, or disciplinary action. A promise or reward may not be made as an inducement to answer any questions.

(g) The formal interrogation of a law enforcement officer or correctional officer, including all recess periods, must be recorded on audio tape, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements. Upon the request of the interrogated officer, a copy of any recording of the interrogation session must be made available to the interrogated officer no later than 72 hours, excluding holidays and weekends, following said interrogation.

(h) If the law enforcement officer or correctional officer under interrogation is under arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights before commencing the interrogation.

(i) At the request of any law enforcement officer or correctional officer under investigation, he or she has the right to be represented by counsel or any other representative of his or her choice, who shall be present at all times during the interrogation whenever the interrogation relates to the officer's continued fitness for law enforcement or correctional service.

(j) Notwithstanding the rights and privileges provided by this part, this part does not limit the right of an agency to discipline or to pursue criminal charges against an officer.

Both sides agree that the rights granted to law enforcement officers and correctional officers under section 112.532 only apply when the officer's employing agency is conducting an investigation. Thus, the Law Enforcement Officers' and Correctional Officers' Bill of Rights and the protections it provides

to law enforcement officers does not protect them when they are being investigated and questioned by the CIP.

**C. <u>The City of Miami's ordinance is expressly preempted by Florida Statute</u>**

Section 112.533, enacted in 1974, was amended in 2003 to add the following bolded language:

> (1)(a) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, **which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary.**

§ 112.533(1)(a), Fla. Stat. (2003) (emphasis added).

The use of the word "the" before "procedure" is significant. As stated by the Attorney General:

> "The" is a definite article generally used before nouns with a specifying or particularizing effect and as opposed to the generalizing effect of the indefinite article "a" or "an" and, depending on the context, generally is used to mean but one.

Op. Att'y Gen. Fla. 259 (1981), <u>see also</u> <u>Work v. United States ex rel. McAlestered-Wards Coal Co.</u>, 262 U.S. 200, 208 (1923).

It is also noteworthy that the 2003 amendment provided an express statutory exception authorizing investigation by the Criminal Justice Standards and Training Commission. § 112.533(1)(a), Fla. Stat. (2003). It did **not,** however, provide an

22

exception authorizing citizen review panels to conduct such investigations.

In 2007, section 112.533 was further amended to require that:

> (1)(b)1. Any political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer **must within 5 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation.**
> 2. For purposes of this paragraph, the term "political subdivision" means a separate agency or unit of local government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission, consolidated government, county, department, district, institution, metropolitan government, municipality, office, officer, public corporation, town, or village.

§ 112.533(1)(b), Fla. Stat. (2007) (emphasis added).

There is nothing ambiguous about these amendments. As the Fifth District Court of Appeal found in Demings v. Orange County Citizens Review Board, 15 So. 3d 604, 608-09 (Fla. 5th DCA 2009), the statute as amended

> conveys a clear and definite directive that when a complaint is registered against a law enforcement officer, **the employing agency is the only local governmental entity authorized to investigate that complaint**. This is clear from: (1) the title language of chapter 2003-149, designating the investigation required by chapter 112 as the "**exclusive procedure**" for investigation; (2) the language added to section 112.533 in 2003, mandating that the investigation authorized by chapter 112 "**shall be *the* procedure" for investigating complaints against local law enforcement "notwithstanding any other law or ordinance to the contrary**;" and (3) the language added to section 112.533 in 2007, directing any local governmental entity that receives or initiates a complaint against a law enforcement officer to forward it to the employing agency for investigation in accordance with chapter 112.

23

(emphasis added).

Thus, the language in section 112.533, as amended, clearly and unambiguously mandates **the** procedure that must be followed when investigating a complaint against a law enforcement or correctional officer. Chapter 112 provides certain exceptions from this mandate. It provides an exception for the Criminal Justice Standards and Training Commission. It also authorizes criminal investigations by the State Attorney's Office, state and federal grand juries, state and federal criminal courts, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, and the United States Department of Justice. See Demings, 15 So. 3d at 608 n.3. Because review by citizen review panels is not excepted, the City of Miami's ordinance is preempted by Florida law and is therefore unconstitutional.

In 2013, the Florida Supreme Court upheld the Fifth District Court of Appeal's decision in City of Palm Bay v. Wells Fargo Bank, 114 So. 3d 924 (Fla. 2013), which struck down a municipal ordinance that was inconsistent with, and in direct conflict with, the general statutory scheme for priority of rights with respect to interests in real property created by the Legislature. The issue was "conflict preemption" and the Florida Supreme Court's analysis is highly instructive.

The Florida Supreme Court began its analysis by acknowledging that "[i]n Florida, a municipality is given broad authority to enact ordinances under its

24

municipal home rule powers," City of Palm Bay, 114 So. 3d at 928 (quoting City

of Hollywood v. Mulligan, 934 So. 2d 1238, 1243 (Fla. 2006)), and that pursuant

to section 166.021 "a municipality may legislate concurrently with the Legislature

on any subject which has not been expressly preempted to the State." Id.

In discussing preemption, the Florida Supreme Court stated the following:

> But we have never interpreted either the constitutional or statutory
> provisions relating to the legislative preemption of municipal home
> rule powers to require the Legislature specifically state that the
> exercise of municipal power on a particular subject is precluded.
> Instead, we have held that "[t]he preemption need not be explicit so
> long as it is clear that the legislature has clearly preempted local
> regulation of the subject." Barragan v. City of Miami, 545 So. 2d
> 252, 254 (Fla. 1989). We have also recognized that where concurrent
> state and municipal regulation is permitted because the state has not
> preemptively occupied a regulatory field, "a municipality's concurrent
> legislation must not conflict with state law." Thomas v. State, 614 So.
> 2d 468, 470 (Fla. 1993).
> The critical phrase of article VIII, section 2(b) — "except as
> otherwise provided by law"— establishes the constitutional
> superiority of the Legislature's power over municipal power.
> Accordingly, "**[m]unicipal ordinances are inferior to laws of the
> State and must not conflict with any controlling provision of a
> statute**." Thomas, 614 So. 2d at 470. When a municipal "ordinance
> flies in the face of state law"— that is, cannot be reconciled with state
> law—the ordinance "cannot be sustained." Barragan, 595 So. 2d at
> 255. **Such "conflict preemption" comes into play "where the local
> enactment irreconcilably conflicts with or stands as an obstacle to
> the execution of the full purposes of the statute**." 5 McQuillin
> Mun. Corp. § 15:16 (3d ed. 2012).
>
> . . . .
>
> [T]he Legislature has created a general scheme for priority of rights
> with respect to interest in real property. **Giving effect to the
> ordinance superpriority provision would allow a municipality to**

25

**displace the policy judgment reflected in the Legislature's enactment of the statutory provisions. And it would allow the municipality to destroy rights that the Legislature established by state law**. A more direct conflict with a statute is hard to imagine. Nothing in the constitutional or statutory provisions relating to municipal home rule or in the Local Government Code Enforcement Boards Act provides any basis for such municipal abrogation of a state statute. The conflict between the Palm Bay ordinance and state law is a sufficient ground for concluding that the ordinance super priority provision is invalid.

We categorically reject the City's argument that the legislative enactment of exceptions to a statutory scheme provides justification for municipalities to enact exceptions to the statutory scheme. No authority supports this argument. The power to create exceptions to a legislative scheme is the power to alter that legislative scheme. "**Fundamental to the doctrine of preemption is the understanding that local governments lack the authority to craft their own exceptions to general state laws**." 5 McQuillin Mun. Corp. §15:18 (3d ed. 2012). Although municipalities generally have "the power to enact legislation concerning any subject matter upon which the state legislature may act," §166.021(3), Fla. Stat. (2004), in exercising their power within that scope municipalities are precluded from taking any action that conflicts with a state statute. In this context, **concurrent power does not mean equal power**.

Id. at 928-29. (emphasis added).

The City of Miami's ordinance does exactly what Florida's constitution and the Florida Supreme Court in City of Palm Bay forbids. It creates an exception to the statutory scheme provided in Chapter 112, Part VI, which governs the rights of law enforcement officers while under investigation. As previously stated, section 112.533(1)(a) establishes "the" procedure which "shall be the procedure for investigating a complaint against a law enforcement and correctional officer," and section 112.533(1)(b) requires that any complaint filed against a law enforcement

26

or correctional officer must be forwarded to the employing agency of the officer for investigation. The statute "conveys a clear and definite directive that when a complaint is registered against a law enforcement officer, the employing agency is the only local governmental entity authorized to investigate that complaint." Demings, 15 So. 3d at 608.

The only exceptions to this statutory scheme have been explicitly provided by the Legislature. The Legislature has provided an exception for the Criminal Justice Standards and Training Commission, see § 112.533(1)(a), and it additionally authorizes investigations of law enforcement and correctional officers by the State Attorney's Office, state and federal grand juries, state and federal courts, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, and the United States Department of Justice. See Demings, 15 So. 3d at 608 n.3. Conspicuously missing from this list are citizen review panels. And as the Florida Supreme Court stated in City of Palm Bay, "[f]undamental to the doctrine of preemption is the understanding that local governments lack the authority to craft their own exceptions to general state laws . . . concurrent power does not mean equal power." City of Palm Bay, 114 So. 3d at 929.

**D.** **The City of Miami's ordinance is also in conflict with Florida law**

The City of Miami's ordinance is not only preempted by state law, it is also in direct conflict with state law. Section 112.533, as amended in 2003 and 2007,

27

specifies that a law enforcement agency's internal investigation shall be **the** procedure for investigating law enforcement and correctional officers **notwithstanding any other law or ordinance to the contrary**. § 112.533(1)(a), Fla. Stat. (2007). In 2007, the statute was also amended to direct all local governmental entities that receive or initiate a complaint against a law enforcement or correctional officer to forward the complaint to the employing agency for investigation in accordance with Chapter 112. § 112.533(1)(b).

Section 112.533 also adds various other duties by the investigating agency and protections for the law enforcement or correctional officer being investigated. For example, section 112.533(1)(a) dictates that agency personnel assigned to the investigation must: prepare a report; **verify that the contents are true and accurate** based on personal knowledge, information, and belief; and include a sworn statement attesting that the rights of the officer under investigation contained in sections 112.532 and 112.533 have been honored. Section 112.533(2)(a) provides that the complaint and investigation **must be kept confidential** until the investigation is closed or the agency head provides written notice to the subject officer informing the officer that the investigation has concluded and whether disciplinary charges will be filed. Section 112.533(2) additionally grants the subject officer and/or his attorney **broad discovery rights and access**, and section 112.533(4) establishes **penalties** for premature willful

disclosure or failure to provide the subject officer with access to the identified discoverable items.

These statutorily mandated obligations of the investigating agency and the rights granted to law enforcement and correctional officers are not similarly required or granted under the City of Miami's ordinance, nor are the rights set forth in section 112.532. Specifically, section 112.532(1) requires that: (1) the interrogation take place at the precinct or correctional unit where the incident allegedly occurred, at a reasonable time and preferably while the officer is on duty, § 112.532(1)(a-b); (2) all questions directed to the officer be asked by or through one interrogator during any one investigative interrogation, § 112.532(1)(c); (3) the officer under investigation must be informed of the nature of the investigation, the name of the complainant(s) and witnesses, all witness statements, and other evidence obtained, prior to the interrogation of the subject officer, § 112.532(1)(d); (4) the interrogation must be recorded and be made available upon request by the subject officer within 72 hours of the interrogation, § 112.532(1)(g); (5) if the subject officer is under arrest or is likely to be placed under arrest as a result of the interrogation, he or she must be informed of his or her rights prior to commencement of the interrogation, § 112.532(1)(h); and (6) the subject officer has the right to be represented by counsel and have counsel present during the interrogation, § 112.532(1)(g). The City of Miami Ordinance does not provide

29

these protections.

The following protections are also provided by Chapter 112, Part VI, to law enforcement and correctional officers under investigation and are not required by the City of Miami's ordinance. Section 112.532(3) grants law enforcement and correctional officers the right to bring a civil suit against any person, group, organization or corporation, or the head of such organization or corporation, for abridgment of the officer's rights or for filing a complaint which the person or entity knew was false when it was filed. Section 112.532(6) additionally restricts the investigation to a 180-day period.

Because the City of Miami's ordinance does not include these substantial, material requirements and rights, it is in direct conflict with sections 112.532 and 112.533. Therefore, the ordinance is unconstitutional. To hold otherwise would render these statutes meaningless and provide law enforcement and correctional agencies with a mechanism to obtain statements and other evidence from its officers by non-statutorily created boards that are not required to comply with the statutory mandates contained in Chapter 112. In other words, it would permit law enforcement to use evidence the CIP obtained without affording the subject officer the protection of the Law Enforcement Officers' Bill of Rights.

In reaching its contrary conclusion, the majority relies on this Court's opinion in Timoney v. City of Miami Civilian Investigative Panel, 990 So. 2d 614

(Fla. 3d DCA 2008), while noting that the majority opinion conflicts with the Fifth District Court of Appeals opinion in <u>Demings</u>. <u>Timoney</u>, however, did not address the constitutionality of the City of Miami's ordinance or analyze whether the ordinance conflicts with or is preempted by state statute. This Court in <u>Timoney</u> merely determined that because Chapter 112 only governs the rights of law enforcement officers under investigation, and the definition of "law enforcement officer" in section 112.531(1) specifically exempts the chief of police from its definition, Chapter 112 did not apply to Chief Timoney and he was therefore subject to the CIP's investigative subpoena. <u>Timoney</u> is therefore not controlling. Indeed, the majority, does not contend that it is. Conversely, the Fifth District Court of Appeal in <u>Demings</u> did address the constitutionality of a similar county ordinance in Orange County and found that it was in direct conflict with Chapter 112. I wholeheartedly agree with the Fifth District's opinion in <u>Demings</u>.

In <u>Demings</u>, Orange County's Sheriff, Jerry Demings, and his deputy, Steven Jenny, appealed the trial court's order upholding the sections of Orange County's charter and ordinances establishing the Orange County Citizen's Review Board ("the CRB"), which is similar to the board created by the City of Miami, the CIP, and was created to investigate citizen complaints of excessive force and abuse of power. <u>Demings</u>, 15 So. 3d at 605. After analyzing section 112.533, as amended in 2003 and 2007, the Fifth District Court of Appeal concluded it was

31

unambiguous and "[i]t conveys a clear and definite directive that when a complaint is registered against a law enforcement officer, the employing agency is the only local governmental agency authorized to investigate the complaint." Id. at 608. The Fifth District thus concluded that "**[b]ecause section 112.533 limits the investigation of complaints against law enforcement officers by local government to the employing agency's investigation, the charter provisions and ordinance that establish an additional procedure for investigating these complaints necessarily and directly conflict with the statute.**" Id. at 609 (emphasis added).

## CONCLUSION

Because the City of Miami's ordinance is preempted by state law and it is in direct conflict with sections 112.532 and 112.533, it is unconstitutional. I, therefore, respectfully disagree with the majority opinion upholding the ordinance. Additionally, the majority recognizes, and clearly states, that it "disagrees" with the Fifth District Court of Appeals' opinion in Demings, but then it refuses to certify conflict without addressing its reason(s) for doing so. Because the majority opinion is in direct conflict with Demings, I also respectfully dissent from the majority's refusal to certify direct conflict with Demings.

32